# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Decided May 15, 2009
Reissued May 27, 2009

No. 03-7162

PRO FOOTBALL, INC.,
APPELLEE

v.

SUZAN S. HARJO, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 99cv01385)

*Philip J. Mause* and *Jeffrey J. Lopez* were on the briefs for appellants.

*Robert L. Raskopf* and *Sanford I. Weisburst* were on the brief for appellee.

Before: SENTELLE, *Chief Judge*, TATEL, and HENDERSON, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: At bottom, this case concerns whether various trademarks related to the Washington Redskins football team disparage Native Americans within the meaning of the Lanham Trademark Act, § 2, 15 U.S.C. § 1052(a). But that question has since been overshadowed by the defense of laches, the basis on which the district court first entered judgment for the Redskins six years ago. We reversed that decision, finding that the district court had misapplied the law of laches to the particular facts of the case. *Pro-Football, Inc. v. Harjo* (*Harjo II*), 415 F.3d 44, 50 (D.C. Cir. 2005). On remand, the district court reconsidered the evidence in light of our instructions and again ruled for the team. *Pro-Football, Inc. v. Harjo* (*Harjo III*), 567 F. Supp. 2d 46, 62 (D.D.C. 2008). Now appealing that decision, the Native Americans who originally petitioned for cancellation of the mark argue only that the district court improperly assessed evidence of prejudice in applying laches to the facts at issue. Limited to that question, we see no error and affirm.

## I.

Because previous opinions have already described the background of this case at length, *see Harjo II*, 415 F.3d at 46–47; *Harjo III*, 567 F. Supp. 2d at 48–51, we provide only the essentials. Appellants, seven Native Americans, filed a 1992 action before the Patent and Trademark Office seeking cancelation of six Redskins trademarks that were, they argued, impermissibly disparaging towards members of their ethnic group. Pro-Football, the Redskins' corporate entity and the owner of the marks, argued to the Trademark Trial and Appeal Board that its long-standing use of the name, combined with petitioners' delay in bringing the case, called for application of laches, an equitable defense that applies where there is "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense," *Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101, 121–22 (2002) (internal quotation marks omitted). The TTAB disagreed, observing that petitioners asserted an interest in preventing "a substantial segment of the population" from being held up "to public ridicule," and that insofar as that interest reached "beyond the personal interest being asserted by the present petitioners," laches was inappropriate. *Harjo v. Pro Football Inc.*, 30 U.S.P.Q. 2d 1828, 1831 (TTAB 1994). Finding on the merits that the marks were indeed disparaging, the TTAB cancelled them, *see Harjo v. Pro Football Inc.*, 50 U.S.P.Q. 2d 1705, 1749 (TTAB 1999), depriving Pro-Football of the ability to pursue infringers.

Pro-Football then exercised its option to dispute this holding by means of a civil action in the United States District Court for the District of Columbia. *See* 15 U.S.C. § 1071(b)(1), (4) (providing choice between district court action and Federal Circuit appeal). The district court sided with Pro-Football on the laches issue, holding that the 25-year delay between the mark's first registration in 1967 and the TTAB filing in 1992 indeed required dismissal of the action. *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 144 (D.D.C. 2003). We reversed. "[L]aches," we said, "attaches only to parties who have unjustifiably delayed," *Harjo II*, 415 F.3d at 49, and the period of unjustifiable delay cannot start before a party reaches the age of majority, *id.* at 48–49. The youngest petitioner, Mateo Romero, was only a year old in 1967. Because the correct inquiry would have assessed his delay and the consequent prejudice to Pro-Football only from the day of his eighteenth birthday in December 1984, we remanded the record to the district court to consider, in the first instance, the defense of laches with respect to Romero. *Id.* at 49–50.

4

On remand in this case, the district court again found the defense of laches persuasive. It held that the seven-year, nine-month "Romero Delay Period" evinced a lack of diligence on Romero's part, *Harjo III*, 567 F. Supp. 2d at 53–56, and following our instructions to consider both trial and economic prejudice, *see Harjo II*, 415 F.3d at 50, it found that that delay harmed Pro-Football, *Harjo III*, 567 F. Supp. 2d at 56–62. Now appealing from that decision, Romero challenges neither the applicability of laches *vel non* nor the district court's finding of unreasonable delay. We thus confine our review to the only question Romero does raise: whether the district court properly found trial and economic prejudice sufficient to support a defense of laches.

## II.

Before turning to that question, we must first resolve a preliminary matter flagged but left undecided by our previous opinion: the standard of review. In *Harjo II*, we noted an apparent conflict between *Daingerfield Island Protective Society v. Lujan*, 920 F.2d 32, 38 (D.C. Cir. 1990), and *CarrAmerica Realty Corp. v. Kaidanow*, 321 F.3d 165, 172 (D.C. Cir. 2003), over the standard for reviewing a laches determination made on summary judgment. 415 F.3d at 50. In *Daingerfield*, an appeal from summary judgment, we applied abuse of discretion review, noting the consistent view of the courts that "[b]ecause laches is an equitable doctrine," it is "primarily addressed to the discretion of the trial court." 920 F.2d at 38 (internal quotation marks omitted); *see also Coalition for Canyon Preservation v. Bowers*, 632 F.2d 774, 779 (9th Cir. 1980). By contrast, *CarrAmerica* seems to have reviewed a laches determination *de novo*, *see* 321 F.3d at 172 ("The District Court held that laches did not apply because it determined that Appellants had suffered no prejudice from Appellee's delay. Upon our *de novo* review, we determine that Appellants did indeed suffer prejudice."), but it is unclear

whether this represented a considered opinion on the appropriate standard for reviewing laches decisions or merely referred to the more general standard that typically applies on summary judgment, *see id.* at 170 (referring to general summary judgment standard). Indeed, both standards are relevant: we review the existence of material facts in dispute or the sufficiency of the evidence to support a legal proposition under the familiar *de novo* summary judgment standard, even while deferring to the district court's considerable discretion on the question of how to apply the equitable principles of laches to the undisputed facts. *See, e.g.*, *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818–19 (7th Cir. 1999). We are thus bound by precedent to apply abuse of discretion review, at least where, as here, an appellant concedes that "the material facts are not in dispute," Appellants' Reply. Br. 2.

Reviewing the district court's analysis of prejudice in light of its considerable discretion, we see no reason to reverse. The district court carefully followed our instruction to assess both trial and economic prejudice arising from the Romero Delay Period, finding both. Romero now challenges those determinations, and while his arguments are not without merit, the errors alleged cannot overcome our deferential standard of review.

The district court relied primarily on two factors in finding trial prejudice: (1) the death of former Redskins president Edward Bennett Williams during the Romero Delay Period; and (2) the delay period's general contribution to the time lapse from the date of registration. *Cf. Harjo*, 50 U.S.P.Q. 2d at 1773–75 (disparagement is analyzed at the time of registration). According to the district court, both factors limited Pro-Football's ability to marshal evidence supporting its mark: Williams had met with Native American

leaders close to the time of registration to discuss their views, while the nearly eight years of further delay made it more difficult to obtain any other contemporaneous evidence of public attitudes towards the mark. *See Harjo III*, 567 F. Supp. 2d at 56–58. Romero mainly argues that this "lost evidence" would have had minimal value. He believes that Williams' testimony would have reflected only a narrow set of views on the disparaging nature of the Redskins marks, and that any possibility that 1967 attitudes could have been better surveyed at the time of an earlier suit is outweighed by other overwhelming evidence of disparagement. We needn't cast doubt on Romero's view of the evidence to hold that there was no abuse of discretion. The lost evidence of contemporaneous public opinion is surely not entirely irrelevant, and weighing the prejudice resulting from its loss falls well within the zone of the district court's discretion. In reviewing that assessment, we cannot assume that legally relevant evidence possibly available in an earlier action would have lacked persuasive content.

Nor can we fault the district court's evaluation of economic prejudice. Undisputed record evidence reveals a significant expansion of Redskins merchandising efforts and sizable investment in the mark during the Romero Delay Period. Romero believes this investment is irrelevant absent some evidence that Pro-Football would have acted otherwise—by, say, changing the Redskins name—if Romero had sued earlier. But the district court repeatedly rejected this argument, citing the Federal Circuit's holding in *Bridgestone/ Firestone Research, Inc. v. Automobile Club*, 245 F.3d 1359, 1363 (Fed. Cir. 2001), that "[e]conomic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice." *See Harjo III*, 567 F. Supp. 2d at 59. The court

thus thought it sufficient that the team deployed investment capital toward a mark Romero waited too long to attack, whether or not the team could prove that it would necessarily have changed its name or employed a different investment strategy had Romero sued earlier.

This was no abuse of discretion. To be sure, a finding of prejudice requires at least some reliance on the absence of a lawsuit—if Pro-Football would have done exactly the same thing regardless of a more timely complaint, its laches defense devolves into claiming harm not from Romero's tardiness, but from Romero's success on the merits. But in contrast to the defense of estoppel—which requires evidence of specific reliance on a particular plaintiff's silence—laches requires only general evidence of prejudice, which may arise from mere proof of continued investment in the late-attacked mark alone. *See Automobile Club*, 245 F.3d at 1363 ("'[S]pecific' evidence of 'reliance' on the Automobile Club's silence could relate to proof of estoppel, but it does not apply to laches. When there has been an unreasonable period of delay by a plaintiff, economic prejudice to the defendant may ensue whether or not the plaintiff overtly lulled the defendant into believing that the plaintiff would not act, or whether or not the defendant believed that the plaintiff would have grounds for action."). We have thus described as sufficient "a reliance interest resulting from the defendant's continued development of good-will during th[e] period of delay," and treated evidence of continued investment as proof of prejudice sufficient to bar injunctive relief. *NAACP v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137–38 (D.C. Cir. 1985). Such continued investment was unquestionably present here. The district court thus acted well within our precedent—as well as the precedent of the Federal Circuit, which directly reviews TTAB decisions—in finding economic prejudice on the basis of investments made during the delay

period. The lost value of these investments was sufficient evidence of prejudice for the district court to exercise its discretion to apply laches, even absent specific evidence that more productive investments would in fact have resulted from an earlier suit.

In so holding, we stress two factors. First, as the district court correctly noted, the amount of prejudice required in a given case varies with the length of the delay. "If only a short period of time elapses between accrual of the claim and suit, the magnitude of prejudice required before suit would be barred is great; if the delay is lengthy, a lesser showing of prejudice is required." *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982). This reflects the view that "equity aids the vigilant and not those who slumber on their rights," *NAACP*, 753 F.2d at 137, as well as the fact that evidence of prejudice is among the evidence that can be lost by delay. Eight years is a long time—a delay made only more unreasonable by Romero's acknowledged exposure to the various Redskins trademarks well before reaching the age of majority. *See Harjo III*, 567 F. Supp. 2d at 54–55. The second point follows the first: because laches requires this equitable weighing of both the length of delay and the amount of prejudice, it leaves the district court very broad discretion to take account of the particular facts of particular cases. We have no basis for finding abuse of that discretion where, as here, the claim of error ultimately amounts to nothing more than a different take on hypothetical inquiries into what might have been.

## III.

A final issue concerns the trademark of the team's cheerleaders, the "Redskinettes," which Pro-Football first registered in 1990. As to this mark and only this mark, Romero argues that he acted with reasonable diligence by

filing his action in 1992, only 29 months from the mark's registration. The district court disagreed, finding even this short delay unreasonable given the relationship between the Redskinettes claim and the other claims on which Romero was already delaying. *See id.* & 54 n.5. This view followed from Romero's own litigation position. He argued to the district court, this Court, and the TTAB that the disparaging nature of the Redskinettes name derives from the disparaging nature of the Redskins name itself. *See, e.g.*, Appellants' Opening Br. 28 ("In considering the merits of the Redskinettes mark, this Court would necessarily have to examine the TTAB's analysis of the disparagement associated with the term 'redskin' . . . ."). The district court thus saw no reason why Romero, fully aware of both the team's name and the cheerleaders' name and six-years into his delay period on the former, failed to complain immediately about the registration of the Redskinettes.

While Romero delayed considerably less in attacking the Redskinettes mark, the district court did not abuse its discretion by analyzing the reasonableness of this delay in light of the delay in bringing the underlying claims regarding the name of the team itself. The Federal Circuit has at least suggested that a defense of laches as to a recently registered mark may be based on a failure to challenge an earlier, substantially similar mark, *see Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992), as has the TTAB, *see Copperweld Corp. v. Astralloy-Vulcan Corp.*, 196 U.S.P.Q. 585, 590–91 (TTAB 1977). It is unclear to us how this rule interacts with the requirement to analyze disparagement at the time of registration, since the factual context may well have changed. But in any event and in the context of *this* case, it is difficult to see how it could be inequitable to allow Romero to complain about the Redskins but equitable to allow his complaint about the Redskinettes,

particularly because the Redskinettes name had been in use well before the date of registration. Indeed, the registration of the Redskinettes mark reflects perhaps the greatest reliance on the absence of any previous complaints. Thus, without deciding whether Romero could have avoided laches by attacking the Redskinettes mark on the day of registration, we at least see no abuse of discretion in the district court's finding that the 29-month delay evinced a lack of reasonable diligence.

In fact, we think the Redskinettes issue best demonstrates the reasonableness of the district court's approach to this case as a whole. In 1990, six years into the Romero Delay Period, Pro-Football was not only investing in the Redskins mark, but seeking to expand legal protection of related marks, placing greater reliance on the continued validity of its underlying brand name. It would have been bold indeed for the team to have sought to register the Redskinettes under their existing name had the TTAB been considering revocation—or had the TTAB already revoked—the registration of the Redskins mark. We thus think it neither a stretch of imagination nor an abuse of discretion to conclude that Pro-Football might have invested differently in its branding of the Redskins and related entities had Romero acted earlier to place the trademark in doubt. We accordingly have no basis for questioning the district court's determination.

## IV.

Deciding only the questions presented, and finding no abuse of discretion in the district court's resolution of them, we affirm.

*So ordered.*