# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 17, 2009        Decided July 30, 2010

No. 09-5005

MENOMINEE INDIAN TRIBE OF WISCONSIN,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00812-RMC)

*Geoffrey D. Strommer* argued the cause for appellant. With him on the briefs was *Marsha K. Schmidt*.

*Donald J. Simon*, *Arthur Lazarus Jr.*, and *Lloyd B. Miller* were on the brief for *amici curiae* Arctic Slope Native Association, et al. in support of appellant.

*Donald E. Kinner*, Assistant Director, U.S. Department of Justice, argued the cause for appellee United States of America. With him on the brief was *Jeanne E. Davidson*, Director. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The district court dismissed the breach-of-contract claims of a government contractor, concluding they were barred by the statute of limitations in 41 U.S.C. § 605(a) and the equitable doctrine of laches. For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

**I.**

The Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601 *et seq.* (2006), established a comprehensive framework for resolving contract disputes between executive branch agencies and government contractors. *See id.* § 602(a). In 1994, Congress amended the CDA to require, with one exception not relevant here, that all claims relating to a government contract be submitted, within six years of accrual, to the contracting officer responsible for entering and administering contracts on behalf of the relevant agency. *See* Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, § 2351(a), 108 Stat. 3243, 3322 (codified at 41 U.S.C. § 605(a)).[1]

---

[1] As amended, section 605(a) of Title 41, titled "Contractor claims," reads in relevant part:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. *Each claim by a contractor against the government relating to a contract*

Once the contracting officer issues a decision on a claim or is deemed to have denied the claim by failing to issue a timely decision, *see* 41 U.S.C. § 605(a), (c), a dissatisfied contractor has two options. The contractor may, within ninety days, appeal the decision to the board of contract appeals for the relevant agency. *Id.* § 606. Or the contractor may, within twelve months, file suit in the United States Court of Federal Claims. *Id.* § 609(a). Although these two paths are mutually exclusive, *Tuttle/White Constructors, Inc. v. United States*, 656 F.2d 644, 648–49 (Ct. Cl. 1981), they converge at the Court of Appeals for the Federal Circuit, which hears appeals from both the agency boards and the claims court. 28 U.S.C. § 1295(a)(3), (a)(10); 41 U.S.C. § 607(g).

This appeal found its way to our court—and not our sister circuit—by an unconventional third route, made possible because the case involves a contract authorized by the Indian Self-Determination and Education Assistance Act (ISDEAA). *See* 25 U.S.C. §§ 450 *et seq.* The ISDEAA permits Indian tribes to assume responsibility for federally funded programs or services that a federal agency would otherwise provide to the tribes' members. *See id.* §§ 450b(j), 450f(a). After the

---

*and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim.* The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding.

41 U.S.C. § 605(a) (emphasis added).

tribe and agency memorialize the transfer of authority in a "self-determination contract," they negotiate annual funding agreements, which become part of the contract. *Id.* § 450*l*(c) (subsection (f)(2) of model agreement). Though self-determination contracts are governed by the CDA, *id.* § 450m-1(d), the ISDEAA allows a tribe to bring an action arising under its contract in the district court rather than the Court of Federal Claims. *Id.* § 450m-1(a). The tribe exercised that option in this case.

The parties to the contract at issue are the Menominee Indian Tribe of Wisconsin and the Indian Health Service (IHS), the agency tasked with administering federal health programs for American Indians. Pursuant to a contract with IHS, Menominee has for many years operated a healthcare program for its members. The tribe alleges that the IHS has failed to pay all the "contract support costs" (reasonable administrative expenses and the like) to which it was statutorily entitled for the 1995 to 2004 contract years. *Id.* § 450j-1(a)(2) (obligating agencies to reimburse tribes' contract support costs). Menominee submitted its claims to the IHS contracting officer on September 7, 2005. After the contracting officer denied the claims in their entirety, Menominee timely filed this action for breach of contract in the district court.

The government filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. The district court lacked jurisdiction over the claims for 1996, 1997, and 1998, the government contended, because Menominee had not filed those claims with the contracting officer until after the six-year limitations period in the CDA had expired. Because that deadline does not apply to "contracts awarded prior to October 1, 1995," 48 C.F.R.

§ 33.206, the government argued that the tribe's claim for 1995 was barred by laches.

Menominee did not disagree that it filed its claims for 1996 to 1998 more than six years after their accrual, but argued that the limitations period should be tolled. The tribe's argument relied on the fact that in 1999 two other tribes filed a putative class action on behalf of all Indian tribes "that were not fully paid their contract support cost needs, as determined by IHS," under a self-determination contract. *Cherokee Nation of Okla. v. United States*, 199 F.R.D. 357, 360 (E.D. Okla. 2001) (quoting Notice of Filing Revised Proposed Notice of Class Action). The district court in that case eventually denied class certification. *Id.* at 366. Menominee contended that it fell within the class described in the *Cherokee* complaint and that, under the doctrine of class-action tolling, the limitations period was suspended for two years while asserted members of the *Cherokee* class awaited the certification decision. In the alternative, Menominee asserted that principles of equitable tolling similarly excused the lateness of its claims. If either tolling theory was correct, the tribe's claims for 1996 to 1998 would not be time-barred. Menominee also disputed that laches barred its claim for 1995.

The district court dismissed the claims for 1995 to 1998. *See Menominee Indian Tribe of Wisc. v. United States*, 539 F. Supp. 2d 152 (D.D.C. 2008). The court rejected Menominee's class-action tolling theory on the ground that "presentment to the contracting officer is a mandatory jurisdictional requirement and was not timely performed by the Tribe for its 1996–1998 claims." *Id.* at 154 n.2 (citation omitted). The court also declined to equitably toll the filing deadline, reasoning that "[s]tatutory time limits are jurisdictional in nature, and courts do not have the power to create equitable

exceptions to them." *Id.* at 154. With respect to the claim for 1995, the district court held that laches applied because the tribe's "11-year delay in bringing suit [was] nearly double the time allowed under the statute of limitations," *id.*, and caused the government economic prejudice, *id.* at 154–55.

After the district court dismissed the tribe's remaining claims, Menominee appealed the dismissal of its claims for 1995 to 1998. We have jurisdiction under 28 U.S.C. § 1291.

## II.

We first consider the timeliness of Menominee's claims for 1996 to 1998, which are subject to the statute of limitations in 41 U.S.C. § 605(a). Menominee missed its deadline but argues that the limitations period should be tolled. The government argues that the limitations period is jurisdictional and therefore cannot be tolled, equitably or otherwise. We disagree that the limitations period is jurisdictional but agree with the government's alternative argument that class-action tolling is unavailable in this case. Nevertheless, we conclude that the limitations period in § 605(a) is subject to equitable tolling in appropriate cases and remand for the district court to consider whether it would be proper here. Our conclusions regarding the availability of class-action and equitable tolling under § 605(a) are the same as those reached by the Federal Circuit in *Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785 (Fed. Cir. 2009), *cert. denied*, No. 09-1172 (U.S. June 28, 2010), which issued after the parties filed their briefs in this appeal.

### A. Jurisdiction

The district court treated the six-year deadline in § 605(a) as jurisdictional. *Menominee*, 539 F. Supp. 2d at 154. This was error. Filing deadlines, statutory or not, are generally

nonjurisdictional. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008); *Day v. McDonough*, 547 U.S. 198, 205 (2006); *Scarborough v. Principi*, 541 U.S. 401, 413–14 (2004); *see also Carlisle v. United States*, 517 U.S. 416, 434 (1996) (Ginsburg, J., concurring) ("It is anomalous to classify time prescriptions, even rigid ones, under the heading 'subject matter jurisdiction.'" (footnote omitted)). The time limit in § 605(a) is no exception.

"Subject matter jurisdiction defines the [tribunal's] authority to hear a given type of case." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009). The Supreme Court has distinguished between prescriptions that may be "properly typed 'jurisdictional,'" *Scarborough*, 541 U.S. at 414, and those better classified as "claim-processing rules," *id.* at 413. A claim-processing rule may serve to inform a plaintiff of the time he has to file a claim, *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004), or to "protect a defendant's case-specific interest in timeliness," *John R. Sand*, 552 U.S. at 133, but it "does not reduce the adjudicatory domain of [the] tribunal," *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region (Union Pacific)*, 130 S. Ct. 584, 596 (2009). *See also Dolan v. United States*, No. 09-367, ___ S. Ct. ___, ___ (2010) (slip op. at 4) (noting that a claim-processing rule "do[es] not limit a [tribunal's] jurisdiction, but rather regulate[s] the timing of motions or claims").[2]

---

[2] In dismissing for lack of subject-matter jurisdiction, the district court implicitly concluded that the time limitation in § 605(a) demarcates the jurisdiction of the reviewing court, not only the jurisdiction of the contracting officer. Our holding that the time limit is not jurisdictional eliminates the need for us to doubt the district court's conclusion. In any event, the distinction between jurisdictional requirements and claim-processing rules applies. *See*

The different treatment of claim-processing rules and jurisdictional requirements has significant effects on the scope of authority held by adjudicatory tribunals. Claim-processing rules "typically permit [tribunals] to toll the limitations period in light of special equitable considerations," *John R. Sand*, 552 U.S. at 133, and their protection can be "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick*, 540 U.S. at 456; *see, e.g.*, *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam); *Wilburn v. Robinson*, 480 F.3d 1140, 1144–46 (D.C. Cir. 2007). But a tribunal "has no authority to create equitable exceptions to jurisdictional requirements," *Bowles v. Russell*, 551 U.S. 205, 214 (2007), and litigants cannot by waiver or forfeiture confer jurisdiction where it is otherwise lacking, *see United States v. Cotton*, 535 U.S. 625, 630 (2002); *S. Cal. Edison Co. v. FERC*, 603 F.3d 996, 1000 (D.C. Cir. 2010).

Whether a statutory time limit or other prerequisite to suit is jurisdictional is "discerned by looking to the condition's text, context, and relevant historical treatment." *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1246 (2010). We begin by considering whether Congress "clearly state[d]" the limitation should "rank . . . as jurisdictional." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). If so, our inquiry is over. *Id.* at 515–16. If, on the other hand, the limitation "lacks a clear jurisdictional label," we then ask whether the structure of the statute or long-standing judicial precedent "compel[s] the conclusion that . . . it nonetheless impose[s] a jurisdictional limit." *Muchnick*, 130 S. Ct. at 1244.

---

*Union Pacific*, 130 S. Ct. at 596–98 (applying the distinction to rules governing adjudications by an administrative agency). We note, however, that generally "[a] defect in an agency's jurisdiction . . . does not affect the subject matter jurisdiction of the district court." *Mitchell v. Christopher*, 996 F.2d 375, 378 (D.C. Cir. 1993).

The time limit for initiating a claim under the CDA is not stated in jurisdictional terms. Section 605(a) provides that all claims by a contractor "shall be in writing"; "shall be submitted to the contracting officer for a decision"; and "shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 605(a). The statute does not "refer in any way to . . . jurisdiction," *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982), so we must turn to its structure and history.

The government asks the court to infer from the structure of the statutory regime for processing government contract claims that the limitations period in § 605(a) is jurisdictional. Specifically, the government argues that tolling the six-year deadline in § 605(a) would "undermine" 28 U.S.C. § 2501, Appellee's Br. at 25, which generally limits the jurisdiction of the Court of Federal Claims to claims filed within six years of their accrual. *John R. Sand*, 552 U.S. at 134–38. It is hard to see how. Section 2501 does not even apply to claims arising under the CDA, which instead gives contractors six years to file a claim with the contracting officer and one year to seek judicial review of the contracting officer's decision. *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1580 (Fed. Cir. 1987); *see also* 41 U.S.C. §§ 605(a), 609(a). Regardless of whether § 605(a) is tolled, a contractor may have more than six years after its claim accrues to file suit in the Court of Federal Claims. *See Pathman*, 817 F.2d at 1574–75, 1580. The tolling of the limitations period in § 605(a) simply has no bearing on § 2501.

Likewise, the historical treatment of the type of limitation imposed by § 605(a) does not suggest that its six-year filing deadline is jurisdictional. In *John R. Sand & Gravel Co. v. United States* and *Bowles v. Russell* the Supreme Court recognized the general rule that time requirements do not affect subject-matter jurisdiction but concluded that the

particular time limits at issue in those cases were jurisdictional based on their historical treatment. *See John R. Sand*, 552 U.S. at 134–38 (construing 28 U.S.C. § 2501); *Bowles*, 551 U.S. at 209–11 (interpreting 28 U.S.C. § 2107 and FED. R. APP. P. 4). In each case, the Court rested its decision on a line of Supreme Court precedent dating back more than a century. *John R. Sand*, 552 U.S. at 134 (citing *Kendall v. United States*, 107 U.S. 123 (1883)); *Bowles*, 551 U.S. at 210 (citing *United States v. Curry*, 47 U.S. (6 How.) 106 (1848)). Section 605(a) lacks a comparable lineage. Indeed, it was not until 1994 that Congress enacted any statute of limitations for submitting claims to contracting officers. *See* Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, § 2351, 108 Stat. at 3322. As originally enacted, the CDA contained no time limit on the filing of claims. Pub. L. No. 95-563, § 6(a), 92 Stat. 2383, 2384 (1978). Although government contracts sometimes specified how long the parties would have to submit their claims, *see* 41 U.S.C. § 605 note, these contractual deadlines were not considered jurisdictional, *see Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637 (Fed. Cir. 1989) (holding that failure to submit a timely claim is an "affirmative defense" that "does not oust a tribunal of jurisdiction"); *cf.* JACK PAUL, UNITED STATES GOVERNMENT CONTRACTS AND SUBCONTRACTS 227–28 (1964) ("[I]f the contracting officer decides the contractor's claim on the merits without raising the issue of untimeliness of notice, the notice requirement is deemed waived.").

The government also makes a broader argument: that § 605(a) "run[s] for the benefit of the Government" and this type of time limit has "long been considered jurisdictional." Appellee's Br. at 13. The government has it precisely backwards. *Irwin v. Department of Veterans Affairs* established a "general rule" that time limits for suing the

government are presumptively subject to equitable tolling, 498 U.S. 89, 95 (1990), and therefore nonjurisdictional. The government's categorical argument that statutes of limitations running for the benefit of the Government are jurisdictional in nature lacks merit.

Finally, the government argues that the limitations period in § 605(a) is jurisdictional because it facilitates administrative review and promotes judicial efficiency. That may be so, but such virtues do not make the limitations period jurisdictional. Many time limitations—including claim-processing rules—serve "system-related goal[s] such as facilitating the administration of claims," *John R. Sand*, 552 U.S. at 133. A limitations period should not "be ranked as jurisdictional merely because it promotes important congressional objectives." *Muchnick*, 130 S. Ct. at 1248 n.9.

Because the time limit in § 605(a) is not jurisdictional in nature, the district court erred in dismissing Menominee's claims for lack of subject-matter jurisdiction. We may still affirm, however, if we conclude that the district court should have dismissed for failure to state a claim. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Because Menominee failed to meet the filing deadline and the government has not waived or forfeited its defense of untimeliness, such a dismissal would be proper unless the limitations period can be tolled. We now turn to that question.

### B. Class-Action Tolling

In *American Pipe & Construction Co. v. Utah*, the Supreme Court held "that the commencement of a class action" will in some cases "suspend[] the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). In this case we

consider whether the time limit for filing an administrative claim should be tolled under *American Pipe* when filing that claim is a jurisdictional prerequisite to participation in the class action.

A party generally must exhaust administrative remedies before seeking relief in federal court. *See McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938). That rule "applies to class actions," in which courts typically require "exhaustion by at least one member of the class." *Phillips v. Klassen*, 502 F.2d 362, 369 (D.C. Cir. 1974); *see, e.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975). Where exhaustion is a jurisdictional requirement, however, every class member must exhaust its administrative remedies. *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 704–05 (D.C. Cir. 2009); *see, e.g.*, *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975).

Menominee contends that the pendency of the *Cherokee* class action brought by other Indian tribes against the IHS tolled the limitations period in § 605(a) for all putative class members, including Menominee, under *American Pipe*. At the same time, Menominee acknowledges that it did not submit its claims to the contracting officer until after class certification was denied, and it concedes that the submission of such a claim is a jurisdictional prerequisite to judicial review. Appellant's Br. at 42 n.17.[3] It follows that

---

[3] The concession is well taken. The Federal Circuit and the Court of Claims have long held that the court may not exercise jurisdiction until the contracting officer either issues a decision on the claim or is deemed to have denied it. *See Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1578–79 & n.6 (Fed. Cir. 1994); *Paragon Energy Corp. v. United States*, 645 F.2d 966, 971 (Ct. Cl. 1981) ("Absent this 'claim,' no 'decision' is possible and, hence, no basis

Menominee should have been excluded from the *Cherokee* class, had one been certified, because the tribe had not satisfied the jurisdictional exhaustion requirement. In arguing otherwise, the tribe relies on cases permitting class-action tolling of the administrative filing deadlines in Title VII and the Age Discrimination in Employment Act (ADEA). *See Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1392–93 (11th Cir. 1998) (en banc); *Griffin v. Singletary*, 17 F.3d 356, 359–61 (11th Cir. 1994); *Andrews v. Orr*, 851 F.2d 146, 148–49 (6th Cir. 1988). Those cases are inapposite, however, because neither Title VII nor the ADEA incorporates a jurisdictional exhaustion requirement. *See Zipes*, 455 U.S. at 395 n.11, 397. Also unhelpful is Menominee's citation to *McDonald v. Secretary of Health & Human Services*, 834 F.2d 1085 (1st Cir. 1987), in which all unnamed class members had already satisfied "the non-waivable jurisdictional requirement of having presented 'a claim for benefits . . . to the Secretary,'" *id.* at 1092 n.4 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). *Accord Arctic Slope*, 583 F.3d at 794 & n.1.

---

for jurisdiction in this court."), *aff'd*, 230 Ct. Cl. 884 (1982). Their conclusion is confirmed by the structure of the CDA. By its plain terms, § 8(d) of the Act makes a decision by the contracting officer a jurisdictional prerequisite to review by the agency board of contract appeals. 41 U.S.C. § 607(d) (titled "Jurisdiction"). Section 10, which permits contractors to file a direct action in the Court of Federal Claims "in lieu of appealing the decision of the contracting officer . . . to an agency board," *id.* § 609(a)(1), is not similarly framed in jurisdictional terms. Yet the jurisdiction of the agency boards and the court of claims are clearly coterminous. *See Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 750 (Fed. Cir. 1993). Because a decision from the contracting officer or a "deemed denial" of the claim is a prerequisite to the board's exercise of its jurisdiction, it is likewise necessary for the court to act.

Menominee further argues that even if the *Cherokee* court could not have exercised jurisdiction over its claims, class-action tolling of the period for filing an administrative claim is nevertheless required. In keeping with this court's "functional reading of *American Pipe*," *McCarthy v. Kleindienst*, 562 F.2d 1269, 1274 (D.C. Cir. 1977), we consider whether tolling under these circumstances would serve the purposes underlying the class-action tolling doctrine. We hold that the limitations period for submitting an administrative claim is not tolled under *American Pipe* for asserted class members who, because of their failure to satisfy a jurisdictional exhaustion requirement, are ineligible to participate in the class action at the time class certification is denied.

*American Pipe* addressed what effect, if any, the timely filing of a complaint on behalf of an asserted class should have on the statute of limitations governing the claims of absent class members—a problem that arises from the delay between the commencement of the action and the district court's determination "whether to certify the action as a class action" and how to "define the class and the class claims." FED. R. CIV. P. 23(c)(1)(B). If the statute of limitations on the claims of putative class members continued to run in the meantime, the unnamed plaintiffs would face a choice: act to preserve their rights (by moving to intervene or join or by initiating a separate action) or run the risk of forfeiting their rights if class certification is denied after their claims have grown stale. The *American Pipe* Court held that, where a class is certified, the commencement of the action by the named plaintiff satisfies the statute of limitations "as to all those who might subsequently participate in the suit." 414 U.S. at 551. If certification is denied, then the limitations period is suspended between the filing of the class complaint and the denial of class status. *Id.* at 554. The tolling rule of *American*

*Pipe* permits members of the asserted class to safely await the certification decision before filing a motion to intervene in the action brought by the named plaintiff, *id.*, or a separate lawsuit, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983).

A contrary rule would defeat Rule 23's objectives of "efficiency and economy of litigation" by forcing putative class members to file protective motions to intervene in the pending action or run the risk of their claims growing stale. *American Pipe*, 414 U.S. at 553. "[R]equiring successful anticipation of the determination of the validity of the class would breed needless duplication of motions," the Court explained, because that determination in some cases turns on "such subtle factors as experience with prior similar litigation or the current status of a court's docket." *Id.* at 553–54. The need for class-action tolling thus rests on the uncertainty of putative class members regarding whether the court will certify a class that will protect their interests. If putative class members knew in advance that a class would not be certified or that they would be excluded from the class action, there would be no need for tolling.

We agree with the Federal Circuit that the *American Pipe* doctrine does not require courts to toll the time putative class members have to satisfy a jurisdictional prerequisite to judicial review when the failure to do so precludes them from obtaining relief via the class action. *See Arctic Slope*, 583 F.3d at 797. Until they satisfy the jurisdictional preconditions to class membership, putative class members have no reason to anticipate whether or not class certification will be granted and face none of the uncertainty class-action tolling is meant to ameliorate. Regardless of whether certification is granted, every contractor must submit its claim to the contracting officer. Only once a contractor's claim is denied by the

contracting officer does the contractor have a choice between participating in the class or proceeding individually—the choice with which the class-action tolling doctrine is concerned. Because Menominee could not have participated in the Cherokee class action without first presenting a claim to the contracting officer, the purposes of Rule 23 would not be advanced by tolling the limitations period in § 605(a). "Where the rationale for a rule stops, so ordinarily does the rule." *United States v. Textron Inc.*, 577 F.3d 21, 31 (1st Cir. 2009) (Boudin, J.).

Menominee contends that extending class-action tolling to the time limitation in § 605(a) would advance the goal of "efficiency and economy of litigation" described by the Court in *American Pipe*, 414 U.S. at 553. Unless tolling applies, Menominee asserts, contractors will be forced to file claims with the contracting officer "merely to preserve their rights to participate in [a] proposed class [action]." Appellant's Br. at 17. Yes and no. It is true that contractors must file administrative claims in order to participate in a class action brought under the CDA. But every asserted class member must submit a claim to the contracting officer because of the general rule that one cannot obtain relief as a member of a class action without first satisfying the jurisdictional prerequisites to judicial review, not because class-action tolling is inapplicable to § 605(a). Menominee also suggests that, under our rule, contractors that submit claims to the contracting officer must then file individual actions or motions to intervene within twelve months of the contracting officer's decision. This argument fails, too. The tribe would be correct if the time limit for seeking judicial review in § 609 were not subject to tolling under *American Pipe*, but nothing in our decision precludes application of class-action tolling to that deadline.

Menominee further argues that the district court in *Cherokee* "conclusively decided the parameters of the putative class[,] . . . that the Tribe was a member of that class," and that the issue "cannot be re-litigated." Reply Br. at 4–5 & n.1. That argument has no merit. The *Cherokee* court denied class certification and therefore never defined a class. *See* FED. R. CIV. P. 23(c)(1)(B).

Finally, Menominee contends that class-action tolling should apply here because the tribe's failure to present a timely claim resulted from its reliance upon the *Cherokee* class action and arguments the government allegedly made in the course of that litigation. *See* Appellant's Br. at 17; Reply Br. at 6. But Menominee's purported reliance on the pendency of the class action is not germane to the availability of class-action tolling, which benefits even those "asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings." *American Pipe*, 414 U.S. at 552. The various defenses raised by the government in the *Cherokee* litigation similarly have no bearing on the availability of class-action tolling.

In sum, Menominee advocates extending the benefit of tolling to all members of the class described by the named plaintiff, including those jurisdictionally barred from participation due to their failure to exhaust administrative remedies. Such a rule would serve only one function: Permitting plaintiffs who could not have participated in the class to initiate actions against the government after their claims have grown stale. Adopting the rule Menominee advances would not further the objectives of Rule 23 but rather "invit[e] abuse" of the class device by encouraging lawyers "to frame their pleadings . . . [to] save members of the purported class who have slept on their rights." *Crown,*

*Cork & Seal*, 462 U.S. at 354 (Powell, J., concurring) (quoting *American Pipe*, 414 U.S. at 561 (Blackmun, J., concurring)) (internal quotation marks omitted). We join the Federal Circuit in holding that class-action tolling is not available under these circumstances.

### C. Equitable Tolling

In the alternative, Menominee argues that the CDA's six-year limitations period should be equitably tolled. We agree that the statute is subject to tolling and remand for the district court to consider whether tolling is appropriate in this case.

"It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 49 (2002) (internal citations and quotation marks omitted). Indeed "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in *favor* of equitable tolling." *Holland v. Florida*, No. 09-5327, ___ S. Ct. ___, ___ (2010) (slip op. at 13) (internal quotation marks omitted). That presumption applies in litigation against the United States, *Irwin*, 498 U.S. at 95, where "the injury to be redressed is of a type familiar to private litigation," *Chung v. DOJ*, 333 F.3d 273, 277 (D.C. Cir. 2003). Because the time limitation in § 605(a) is nonjurisdictional and actions for breach of contract are familiar to private litigation, we must presume that § 605(a) is subject to equitable tolling. The only question that remains is whether there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *United States v. Brockamp*, 519 U.S. 347, 350 (1997).

The requirement that all claims "shall be submitted within 6 years after the accrual of the claim," 41 U.S.C. § 605(a), reads like a run-of-the-mill statute of limitations.

Because this provision was enacted after *Irwin* established the presumption in favor of equitable tolling, Congress was on notice that courts would read § 605(a) to permit tolling unless it provided otherwise. *See Holland*, ___ S. Ct. at ___ (slip op. at 13) ("The presumption's strength is . . . reinforced by the fact that Congress enacted [the statute] after th[e] Court decided *Irwin* . . . ."). Yet Congress included no "[s]pecific statutory language" that could be construed to "rebut the presumption." *John R. Sand*, 552 U.S. at 137–38. That silence is a strong indication that *Irwin*'s default rule governs. *Arctic Slope*, 583 F.3d at 798.

The government argues that § 605(a) is much like the statute at issue in *United States v. Brockamp*, in which the Supreme Court held that the *Irwin* presumption had been rebutted even though Congress had not expressly precluded tolling. *Brockamp* involved the time limitation for filing claims for tax refunds. *See* 26 U.S.C. § 6511. In holding that Congress did not want the deadline equitably tolled, the Court relied on several factors including the provision's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions," 519 U.S. at 352, as well as its "unusually emphatic form," *id.* at 350, and the "underlying subject matter" of tax collection, *id.* at 352. None of these factors is at work in § 605(a).

The government describes the CDA as "a detailed, technical, complex scheme that sets forth precise procedures and deadlines for the assertion of a claim." Appellee's Br. at 31. Be that as it may, the government's focus on the regulatory scheme as a whole is misplaced. The *Brockamp* Court did not concern itself with the complexity of the Tax Code taken as a whole, but the complexity of the time limitations found in § 6511. *See* 519 U.S. at 350–51. As *Irwin*

itself illustrates, a fairly complicated regulatory scheme—in that case Title VII—may nevertheless include a limitations period that uses "fairly simple language, which one can . . . plausibly read as containing an implied 'equitable tolling' exception." *Id.* at 350. As the Federal Circuit observed, "[t]he statutory time limitation of section 605(a) is a simple provision and does not contain technical language." *Arctic Slope*, 583 F.3d at 799.

The *Brockamp* Court also drew on the several "explicit exceptions to [the] basic time limits" in § 6511 to conclude that it would be inappropriate to allow equitable tolling. 519 U.S. at 351. Section 605(a) is similar, the government asserts, in that it expressly states that its limitations period does not apply "to a claim by the government against a contractor that is based on a claim by the contractor involving fraud." 41 U.S.C. § 605(a). But this exception is easily explained in a way that does not require us to infer that Congress meant to preclude equitable tolling. When Congress amended § 605(a) to add the limitation period, § 604 already imposed a deadline on the government for claims involving fraud. That deadline specifies that "[l]iability . . . shall be determined within six years of the commission of [the contractor's] misrepresentation of fact or fraud." 41 U.S.C. § 604. In excepting claims involving fraud from the limitations period in § 605(a), Congress presumably meant only to avoid implicitly abrogating § 604. There is no reason to think that the inclusion of an express exception for claims involving fraud should be read to exclude an implicit exception for equitable tolling.[4]

---

[4] The government also argues that tolling the limitations period in § 605(a) would undermine the statute of limitations for filing actions in the Court of Federal Claims, 28 U.S.C. § 2501, which cannot be equitably tolled, *John R. Sand*, 552 U.S. at 137. The

We agree with the Federal Circuit that the time limitation in § 605(a) is subject to equitable tolling. Because the parties dispute facts relevant to application of the equitable tolling doctrine, we remand for the district court to determine whether tolling is appropriate under the circumstances of this case.

**III.**

Neither party suggests that Menominee's claim for 1995 is subject to the CDA's six-year time limit, which is inapplicable to "contracts awarded prior to October 1, 1995." 48 C.F.R. § 33.206. The district court still dismissed Menominee's claim for 1995, but it did so based on the doctrine of laches.

The equitable defense of laches "is designed to promote diligence and prevent enforcement of stale claims" by those who have "'slumber[ed] on their rights.'" *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982) (quoting *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966)). Laches "applies where there is '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Pro Football, Inc. v. Harjo*, 565 F.3d 880, 882 (D.C. Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002)). The district court stated that Menominee's "11-year delay in bringing suit is nearly double the time allowed under the statute of limitations and is certainly long enough to satisfy the standards under the first prong of the test for laches." *Menominee*, 539 F. Supp. 2d at

government offered a substantially similar argument in favor of treating the limitations period as jurisdictional, and we reject the argument here for the same reasons. *See supra*, at 9.

154. The court also explained that this delay prejudiced the government because "[f]unding for the 1995 contract year has long since expired." *Id.*

The parties dispute the applicable standard of review. Menominee urges us to review the dismissal de novo, and the government advocates review under an abuse-of-discretion standard. We have observed that "both standards are relevant" when the district court's laches determination comes at summary judgment, *Harjo*, 565 F.3d at 883, but have not addressed the standard that governs in an appeal from a dismissal. We need not determine here whether our review should be de novo or for abuse of discretion because we would reverse under either standard. With the following observations, we remand for the district court to reconsider the matter.

First, the district court incorrectly calculated the length of the tribe's delay. As the government now acknowledges, the tribe submitted its claim for 1995 "nine years and nine months after the claims accrued," Appellee's Br. at 43, not the eleven years suggested by the district court. *Cf. Gull Airborne*, 694 F.2d at 843 (stating that the plaintiff's delay should be measured by the "period of time [that] elapses between accrual of the claim and suit").

Second, the district court erred in failing to consider the tribe's arguments that its delay was reasonable. "[L]aches is not, like limitation, a mere matter of time," *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946), but "attaches only to parties who have *unjustifiably* delayed in bringing suit." *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 49 (D.C. Cir. 2005) (per curiam) (emphasis added). The doctrine is equitable in nature, and its application "turns on whether the party seeking relief 'delayed inexcusably or unreasonably in filing suit,'" not

simply whether the party delayed. *Id.* (quoting *Rozen v. District of Columbia*, 702 F.2d 1202, 1203 (D.C. Cir. 1983) (per curiam)). On remand, the district court should consider Menominee's arguments that it had good reason for not presenting its claims to the contracting officer sooner.

Third, the district court provided inadequate reasons for concluding that Menominee's delay prejudiced the government. The court offered only the terse observation that "[f]unding for the 1995 contract year has long since expired." *Menominee*, 539 F. Supp. 2d at 154. This statement appears to be an endorsement of the government's assertion in its motion to dismiss that it was "economically prejudiced" by the delay because "the appropriations for 1995 have long since lapsed." Mot. to Dismiss at 9. In support of that position, the government cited the Department of the Interior and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-332, 108 Stat. 2499 (1994), which provided that "[n]o part of any appropriation contained in this Act shall remain available for obligation beyond the current fiscal year unless expressly so provided herein," *id.* § 304, 108 Stat. at 2536. The 1995 fiscal year ended on September 30, 1995. *Id.* pmbl., 108 Stat. at 2499. Because Menominee's claim for 1995 did not accrue until several months later, the relevant appropriations would have already expired had the tribe filed suit on the day its claim accrued. We fail to see how the tribe's delay prejudiced the government.

We close by noting that "a motion to dismiss generally is not a useful vehicle for raising the issue [of laches]." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1277, at 644 (3d ed. 2004). *But see, e.g.*, *Love v. Stevens*, 207 F.2d 32, 32 (D.C. Cir. 1953) (per curiam) (affirming a dismissal based "upon plaintiff's laches"). Laches may be the "legal cousin" of the statute of

limitations, *Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 448 (D.C. Cir. 1994) (Wald, J., dissenting), but it "involves more than the mere lapse of time and depends largely upon questions of fact." WRIGHT & MILLER § 1277, at 643. "[A] complaint seldom will disclose undisputed facts clearly establishing the defense." *Id.* at 643–44.

## IV.

The dismissal of Menominee's claims is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*