Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 16, 2003        Decided March 7, 2003

No. 01-7167
& No. 01-7175

CARRAMERICA REALTY CORPORATION, ET AL.,
APPELLANTS

v.

JOSEPH KAIDANOW AND ROBERT A. ARCORO,
APPELLEES

———

Appeals from the United States District Court
for the District of Columbia
(No. 99cv00260)

———

*Kenneth C. Smurzynski* argued the cause for appellants. With him on the briefs were *Paul Martin Wolff, Eva Petko Esber,* and *Anthony T. Pierce.*

*Eric Seiler* argued the cause for appellees. With him on the brief was *Daniel B. Rapport.*

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before:  EDWARDS and SENTELLE, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*:  This is an appeal from a summary judgment in favor of counterclaiming defendants asserting a shareholder derivative action in answer to a suit for declaratory judgment.  In 1998, OmniOffices, Inc. (Omni) issued 5,535,353 non-voting common shares to its controlling shareholder, CarrAmerica Realty Corp. (CarrAmerica), at a price of $20.00 per share.  In the face of challenges to the fairness of the price from its then-minority shareholders Joseph Kaidanow and Robert Arcoro, Omni and CarrAmerica filed a complaint in District Court seeking a declaration that the issuing price was fair.  Kaidanow and Arcoro counterclaimed, alleging that Omni and CarrAmerica had violated fiduciary duties.  The parties filed cross-motions for summary judgment.  The District Court denied Omni's and CarrAmerica's motion, granted Kaidanow's and Arcoro's and declared the contested shares void.  CarrAmerica and Omni appealed.  On appeal, we hold that the District Court erred in holding the shares void rather than voidable and because we find both that Kaidanow's and Arcoro's claim was barred by the equitable defense of laches and that Omni's Board of Directors properly ratified the issuance of the shares, we reverse the decision below and grant summary judgment for the Appellants, Omni and CarrAmerica.

## Background

CarrAmerica, a Delaware corporation, is a publicly traded real estate investment trust (REIT) that invests in commercial real estate nationwide.  In 1997 CarrAmerica decided to branch into the "executive suites" business. To this end, CarrAmerica acquired Omni, an office suites corporation. CarrAmerica acquired a 95% economic interest in Omni, and in compliance with tax rules governing REITs, non-voting stock.  Omni's capital included a loan from CarrAmerica.  At the time of the acquisition that loan was in the amount of $36 million.  The remaining economic interest in Omni and the

voting shares were acquired by other entities affiliated with CarrAmerica. The total initial investment in Omni was $20 million, and the number of shares to be issued was set at 1 million, resulting in a price of $20.00 per share. Upon acquisition, Omni and the new shareholders entered into a Stockholders' Agreement granting the voting stockholders anti-dilution rights which would enable them to maintain their proportional interest by purchasing additional shares if Omni raised additional equity capital.

A majority of Omni's Board consisted of officers or directors of CarrAmerica, including Thomas Carr, the CEO of CarrAmerica as Chairman. In March 1998, Appellees Kaidanow and Arcoro sold their executive office suites business to Omni for approximately $32.5 million and warrants to purchase, collectively, 185,000 shares of Omni non-voting stock at $20 per share. The agreement gave them anti-dilution protection, entitling them to additional warrants if new Omni equity was issued for less than "fair market value" defined in the agreement as $20 per share through December 31, 1999. They were permitted to exercise their options at any time. The warrants made clear that as warrant holders they had no shareholder rights. Kaidanow was invited to join the Omni Board and became a director. At about the same time, CarrAmerica increased its loan to Omni to about $111 million at a rate of 9.5% annual interest. Additionally, each CarrAmerica affiliated shareholder invested additional capital in March and April 1998.

On May 7, 1998, the Omni Board, including director Kaidanow, approved a resolution, hereinafter the "Conversion Resolution," authorizing the amendment of the CarrAmerica loan into a convertible loan, at a conversion price of not less than $20 per share. The Conversion Resolution states:

> WHEREAS, the Corporation has borrowed approximately $111 million from CarrAmerica Realty Corporation pursuant to a Loan Agreement and related documents dated as of March 31, 1998 (the "CarrAmerica Loan"); and

WHEREAS, the Board of Directors has determined that it is advisable and in the best interests of the Corporation to negotiate with CarrAmerica regarding the possible conversion of the CarrAmerica Loan to a loan in which CarrAmerica may convert some or all of such a loan into equity of the Corporation;

NOW, THEREFORE, IT IS RESOLVED, that the conversion of the CarrAmerica Loan into a loan, some or all of which may be converted into equity of the Corporation, hereby is approved; provided, *that the equity value used for conversion purposes shall not be less than $20 per share*; and

RESOLVED FURTHER, that the officers of the Corporation, or any of them, be and hereby are authorized, in the name and on behalf of the Corporation, to negotiate, execute and deliver any and all documents as they deem necessary or advisable in order to facilitate the conversion of the CarrAmerica loan into a convertible loan, and to do or cause to be done any and all such further acts and things as they may deem necessary or advisable in order to effectuate these resolutions.

(Emphasis added.)

In August 1998, Kaidanow and Arcoro exercised their warrants and each tendered $1.5 million to Omni for 75,000 shares of non-voting stock, in order to improve their legal position for challenging corporate conduct. Thus, Kaidanow and Arcoro became minority shareholders of Omni for the first time on September 1, 1998. At this point they expressed to the Board their position that the conversion price of $20 was unfair. The Omni Board met again on September 15, 1998. Kaidanow did not attend. However, he asked Thomas Carr to raise concerns about the conversion price at the meeting. Carr mentioned at the meeting that Kaidanow and Arcoro had become minority shareholders and their rights as such should be considered when undertaking corporate action.

On September 30, CarrAmerica and Omni executed an amendment to the Loan Agreement making the $111 million

CarrAmerica loan convertible, in whole or in part, into Omni stock at a price of $20 per share. CarrAmerica immediately exercised its rights and converted the loan into 5,535,353 Omni shares. There was no negotiation over the conversion price. On November 5, 1998, the Board met again, this time with Kaidanow in attendance. During the meeting, Kaidanow stated that he and Arcoro had personal claims against the Board and made an offer to allow the Board to purchase their interests for between $12.5 and $25 million. This offer was not accepted by the Omni Board.

The next Omni Board meeting took place on December 17, 1998. Kaidanow was again not present, and the Board passed a resolution authorizing 291,334 additional shares of common stock, in compliance with the anti-dilution provisions of the Stockholders' Agreement with the original Omni shareholders. This resolution, the "December Resolution," states:

> WHEREAS, on September 30, 1998, the Corporation issued 5,535,353 shares of non-voting common stock to CarrAmerica Realty Corporation at a purchase price of $20.00 per share;

> WHEREAS, under the terms of a Stockholders' Agreement dated as of August 21, 1997 by and among the Corporation, Security Capital Holdings S.A., Security Capital U.S. Realty, The Oliver Carr Company, Strategic Omni Investors LLC and CarrAmerica Realty Corporation, as amended (the "Stockholders' Agreement"), if the Corporation raises equity capital, it is required to provide each of the voting stockholders the right to contribute a proportionate share of such capital at the same purchase price per share so as to maintain their percentage economic interest in the Corporation;

> WHEREAS, the Board of Directors desires to authorize and approve the issuance of up to 291,334 additional shares of voting common stock at a purchase price of $20.00 per share, in accordance with the terms of the Stockholders' Agreement (the "Stock Issuance"); and
> . . .

NOW THEREFORE BE IT RESOLVED, that the Board of Directors hereby authorizes and approves the Stock Issuance; and . . .

RESOLVED FURTHER, that the officers of the Corporation, or any one or more of them, hereby are authorized, in the name of and on behalf of the Corporation, to execute and deliver such documents and instruments as they, or any one or more of them, determine to be such instruments as they determine to be necessary or advisable in connection with the Stock Issuance or the satisfaction of the Corporation's obligations under the Stockholders' Agreement (such determination to be conclusively, but not exclusively, evidenced by the execution and delivery thereof by any such officer); and

RESOLVED FURTHER, that all actions heretofore taken by the officers of the Corporation with respect to the Stock Issuance hereby are ratified, confirmed and approved.

On February 4, 1999, Omni filed the present action in District Court seeking a declaration that the $20 conversion price was fair and that CarrAmerica was the owner of 6,850,000 shares of Omni non-voting stock. That same day, Kaidanow resigned from the Omni Board. On March 1, 1999, Kaidanow and Arcoro counterclaimed against Omni, CarrAmerica and all directors other than Kaidanow, alleging breach of fiduciary duties based on the claim that the conversion price was unfair. On November 4, 1999, CarrAmerica, Omni and the remaining directors moved for summary judgment on the grounds that Kaidanow and Arcoro were estopped from challenging the conversion because (1) Kaidanow had voted in favor of the Conversion Resolution and did not seek modification or revocation of that resolution prior to conversion;[1] (2) Kaidanow and Arcoro lacked standing to challenge the conversion because they did not own Omni stock at the time the

---

[1] While it is not entirely clear why the acts of Kaidanow would estop Arcoro as well as himself, all parties have agreed that Kaidanow "represented" Arcoro on the board so that issue is not before us.

conversion was approved; (3) the business judgment rule applied to the conversion decision; and (4) CarrAmerica, et al., had not breached any fiduciary duties. While this motion was pending, on January 21, 2000, CarrAmerica announced it was selling the bulk of its Omni stock as part of a merger between Omni, FrontLine Capital Group and VANTAS. This merger closed on June 1, 2000.

On November 27, 2000, Kaidanow and Arcoro moved for leave to file a cross-motion for summary judgment based solely on the claim, raised for the first time during this litigation, that the issued conversion shares were, in fact, void because they lacked statutorily required board authorization under sections 152 and 153 of the Delaware General Corporate Law (DGCL), Del. Code Ann. tit. 8, §§ 152, 153 (2001). The DGCL requires that the board of directors of a corporation establish the consideration to be received for stock. Section 153(a) provides: "[s]hares of stock with par value may be issued for such consideration . . . as determined from time to time by the board of directors, or by the stockholders if the certificate of incorporation so provides." Del. Code Ann. tit. 8, § 153(a). Section 152 provides that consideration for issued stock "shall be paid in such form and in such manner as the board of directors shall determine" and that "the judgment of the directors as to the value of such consideration shall be conclusive." Del. Code Ann. tit. 8, § 152.

On September 12, 2001, the district court issued its Opinion and Order denying CarrAmerica's motion for summary judgment and granting that of Kaidanow and Arcoro. Before us, CarrAmerica challenges the District Court's conclusion that (1) the conversion shares issued to CarrAmerica lacked the necessary statutory authorization and were therefore void; and (2) the equitable defenses of ratification, estoppel, laches and unclean hands were not applicable. The District Court expressed no conclusion as to the fairness of the $20 conversion price or the allegations of breaches of fiduciary duty.

This Court reviews grants of summary judgment *de novo*. *See Goldman v. Bequai*, 19 F.3d 666, 672 (D.C. Cir. 1994).

Summary judgment is appropriate where there are no genuine issues of material facts, taking as true the evidence of the non-moving party and drawing all inferences in its favor. *See id.* Applying that standard, we hold that the District Court erred in holding that the conversion shares were void, rather than merely voidable. Voidable acts can be ratified and parties may be precluded from challenging such acts based on equitable defenses. Therefore, we reverse the District Court's decision and grant summary judgment for CarrAmerica because Appellee's claims were barred by the equitable defense of laches, and the Omni Board took the necessary actions to ratify the issuance of the conversion shares.

## Analysis

As a threshold matter, the District Court's holding that the conversion shares were automatically void because they were issued in violation of the DGCL is incorrect. The District Court first held that the plain language of the Conversion Resolution did not support the contention that the Omni Board had "determined" the $20 per share price, as required by section 152. The District Court cited language in the resolution which indicated that the $20 per share price was still open to negotiation, and therefore not determined by the Board. *See OmniOffices, Inc. v. Kaidanow*, 2001 WL 1701683, at *9 (D.D.C. Sept. 12, 2001). The District Court then determined that Delaware law required that shares issued in violation of the Delaware statute were automatically void and thus not open to equitable challenges or ratification. *See id.* at *12–*16. Assuming, as the District Court held, that the conversion shares were not issued in compliance with the requirements of the DGCL, we hold that Delaware law does not compel the automatic voiding of shares issued in such a case. We further conclude that because these shares are merely voidable, as opposed to void, equitable defenses are therefore available.

As in other jurisdictions, the law of Delaware distinguishes between those improper acts of a corporate board which are "void" and those which are merely "voidable." As the Dela-

ware courts have explained, the essential distinction between voidable and void acts are that those acts which the corporation could accomplish lawfully but which it has undertaken to accomplish in an inappropriate manner are voidable. Acts which the corporation could not accomplish lawfully, no matter how undertaken, are void and cannot be cured. *See Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 896 (Del. Ch. 1999). Appellees argue that both *Triplex Shoe Co. v. Rice & Hutchins, Inc.*, 152 A. 342 (Del. 1930), and *STAAR Surgical Co. v. Waggoner*, 588 A.2d 1130 (Del. 1991), support their contention that an act performed by a corporate board in violation of a Delaware corporate statute, albeit an act within the Board's authority under its own corporate charter and bylaws, is necessarily void and renders the resulting shares invalid. We disagree. The two cases on which the Appellees rely are distinguishable from the current case.

In *Triplex Shoe*, the corporation's certificate of incorporation did not validly authorize the challenged stock issuance, and thus "the corporation had no power or authority from the State to issue the stock in question." 152 A. at 347. The court held that because the issuance was *ultra vires*, the resulting shares were void and could not be saved by a subsequent amendment to the certificate of incorporation. *Id.* at 348. The court distinguished other cases in which improperly issued stock was not found to be void on the basis of whether the acts of the board were within or not within the power of the corporation. *Id.* In this case, the Appellants do not contend that Omni lacked the power to issue conversion shares, only that the board's method of issuing the shares violated a statutory requirement. Therefore, *Triplex Shoe* is not determinative of their case. Their reliance on *STAAR Surgical* is similarly misplaced.

The *STAAR* court addressed a narrow issue regarding the validity of convertible preferred shares issued by a corporation in violation of § 151, Del. Code. Ann. tit. 8, §§ 151(a), (g), which mandates that in order to validly issue preferred stock, the board must adopt a resolution and if new shares are created by such a resolution, that the board must adopt a certificate of designation amending the certificate of incorpo-

ration. *See STAAR Surgical*, 588 A.2d at 1135. In *STAAR*, the board failed to adopt either the required resolution or the certificate of designation, and the court stressed, when it held the stock void, that the certificate of incorporation had never been amended to allow the board to issue the preferred shares: "a board's failure to adopt a resolution and certificate of designation, amending the fundamental document which imbues a corporation with its life and powers, and defines the contract with its shareholders, cannot be deemed a mere 'technical' error." *Id.* at 1137. Thus, *STAAR* is consistent with the principle that a void result occurs when a corporate board acts without authorization, while the result of an authorized act improperly accomplished may be merely voidable. *See, e.g., Huizenga*, 751 A.2d at 896.

This principle is highlighted in the recent Delaware case, *Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531 (Del. Ch. 1999), in which the same issue, whether issued shares were properly authorized by the board, or issued in violation of a provision of the DGCL. In that case, the court found that even though the shares had not been initially authorized in full compliance with the statute's requirements, subsequent board ratification cured any defect. Therefore, the resulting shares were valid. This holding incorporates the more fundamental principle that the shares, prior to ratification, were merely voidable, not void, because only voidable acts would be open to ratification. *See, e.g., Michelson v. Duncan*, 407 A.2d 211, 219 (Del. 1979).

Because we conclude that the District Court erred in holding the shares automatically void, as opposed to voidable, we must now consider the Appellants' arguments that there are equitable defenses which bar the claims brought by Kaidanow and Arcoro, and that the Omni Board effectively ratified the issuance of the conversion shares.

Appellants argue that Kaidanow and Arcoro are barred in their claims by the equitable defense of laches. Laches applies where there has been an unfair and prejudicial delay by a plaintiff in bringing an action. As we have noted on other occasions, the rationale for this defense is, "[a]s claims

become increasingly stale, pertinent evidence becomes lost; equitable boundaries blur as defendants invest capital and labor into their claimed property; and plaintiffs gain the unfair advantage of hindsight, while defendants suffer the disadvantage of an uncertain future outcome." *N.A.A.C.P. v. N.A.A.C.P. Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985). The prejudice that can result from such delay is particularly unsettling when, as here, the claim affects the validity of stock which is central to a merger between the named corporation and corporate entities foreign to the complaint.

Kaidanow and Arocoro offer no excuse for their failure to raise the claim that the shares were void because of the Board's failure to comply with the Delaware statute in a more timely manner. Neither the law nor the underlying facts had changed since the original counterclaim was filed on March 1, 1999. However, the initial pleading alleged only that the price for which the stock was issued was substantially below its fair value and that the acquisition of the stock constituted self-dealing undertaken in breach of fiduciary duties owed by appellants to Arcoro, Kaidanow, and Omni Offices, claims which Appellees have not undertaken to support before us, but which apparently remain pending in parallel litigation before the courts of Delaware. The counterclaim contained no allegation of statutory non-compliance, even though the record is clear that both Kaidanow and Arcoro were well aware of the content of the Board's Conversion Resolution, which forms the basis of their statutory argument. They failed to raise the issue in the course of this litigation until November 2000. The District Court held that laches did not apply because it determined that Appellants had suffered no prejudice from Appellee's delay. Upon our *de novo* review, we determine that Appellants did indeed suffer prejudice.

If Kaidanow and Arcoro had raised their objections to the issuance based on improper board authorization earlier, Omni could immediately, and at a comparatively insignificant cost, have remedied the alleged defect by simply voting on and approving a resolution which was indisputably compliant with the requirements of the statute. However, the delay has

permitted the matter to "become entangled and the rights and business concerns of others to intervene." *Updyke Assocs. v. Wellington Mgmt. Co.*, 1982 WL 17848, at *2 (Del. Ch. Feb. 4, 1982). Omni and CarrAmerica continued in their business for years under the belief that the Conversion Resolution had successfully extinguished the $111 million loan. Omni entered into a merger agreement based on this premise, whereby CarrAmerica sold much of the issued stock to a third party, which in turn sold it to other parties. These transactions were completed months before Kaidanow or Arcoro brought the statutory issue to the attention of any opposing party.

As much as Appellees argue otherwise, alleging that $20 per share is an unfair price is not the same complaint as alleging that a statutory defect existed in the issuance of the shares. Had Kaidanow or Arcoro brought this defect to the attention of the Omni Board, it could have easily corrected the deficiency, and avoided the potential voiding of millions of shares. It would have been a simple matter for the Board to either redraft the resolution or cancel and reissue the shares prior to the merger. The same is not true two years after the fact. This delay was particularly egregious given that Kaidanow was an Omni director at the time of issuance. His position gave him ample opportunity to raise these objections on any number of occasions, and had he done so, even after the shares were issued, the Board would have easily been able to cancel and reissue the shares with proper board authorization. The prejudice suffered by Omni in this case is the loss of an easy extrication from this problem—a loss resulting from the delay by Appellees in bringing it to the Board's attention before the shares became the basis for complex corporate dealings with third parties. Therefore, the equitable defenses of laches may be appropriately applied to this situation, and Kaidanow's and Arcoro's statutory claim is barred.

Finally, we hold that the Board took the necessary steps to ratify the issuance of the shares at the December 1998 Board meeting, at least through implied ratification. Because the shares were not void, only voidable, validity could be properly

conferred by Board ratification. *See, e.g.*, *Kalageorgi*, 750 A.2d at 539 ("Where board authorization of corporate action that falls within the board's *de jure* authority is defective, the defect in authority can be cured retroactively by board ratification."). Directors may ratify a corporate action either expressly or impliedly. Ratification may be implied "if the corporation, represented by the board of directors, who have knowledge of the facts, accepts and retains the benefits of the contract or act, or recognizes it as binding, or acquiesces in it." 2A WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 762 (perm. ed., rev. vol. 2001). Here, the December Resolution, approved by the Board during a regular meeting stated: "on September 30, 1998 the Corporation issued 5,535,353 shares of non-voting common stock to CarrAmerica Realty Corporation at a purchase price of $20.00 per shares [sic]." While the December Resolution, in its body, did not contain language explicitly stating the Board's ratification of its approval of the $20 per share price, a leading corporate law treatise teaches that "[a]n express resolution of ratification is not necessary but it is sufficient that the board of directors, as a board, received report or notice of the transaction requiring ratification, and, with knowledge, not only failed to repudiate it, but treated it the same as other obligations of like kind." FLETCHER ET AL. § 762. The December Resolution does at least that much.

The evidence before us demonstrates that the Board was aware of the $20 per share conversion price and that the December Resolution was premised on the September issuance of the conversion shares. Not only does the language in the December Resolution clearly reference the Conversion Resolution and the $20 per share price, but the record also shows that the Omni directors delayed voting on the December Resolution until they had an opportunity to review an independent analysis of the $20 price for its fairness and felt comfortable with the issuance. It is clear from the evidence in the record that the Omni directors could not have logically voted in favor of the December Resolution without being aware of, and approving of, the conversion of the CarrAmerica loan at $20 per share. This is sufficient to find implied

ratification. *See In re Lukens Inc. Shareholders Litig.*, 757 A.2d 720, 737–38 (Del. Ch. 1999). Therefore, the Omni Board at least impliedly ratified the Conversion Resolution by its actions in the December board meeting and its approval of the December Resolution.

Because we conclude that the District Court erred when it held that the conversion shares were automatically void, and because we hold that the shares were merely voidable, we reverse the District Court's grant of summary judgment for Appellees. Because the shares were only voidable, the equitable defense of laches may be properly applied, and we further hold that defense bars the Appellees' claim here. In addition, we find that the shares are valid because the Board ratified their issuance in its December Resolution. Therefore, we reverse the District Court and grant summary judgment in favor of Appellants.