NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1995                                          Appeals Court

J. BRENT FINNEGAN & others[1] vs.  RICHARD BAKER & others.[2]


No. 13-P-1995.

Suffolk.     January 6, 2015. - August 14, 2015.

Present:  Grainger, Brown, & Milkey, JJ.


Corporation, Close corporation, Stock.  Loan.



Civil action commenced in the Superior Court Department on
September 4, 2009.

The case was heard by Peter M. Lauriat, J., and entry of
separate and final judgment was ordered by him.


Ilyas J. Rona for the plaintiffs.
David B. Chaffin for the defendants.


BROWN, J.  This is a shareholder dispute over control of

VBenx Corporation (VBenx), a closely held Delaware corporation

---

[1] Finnegan and Kenneth F. Phillips bring this action for
themselves and in the right and for the benefit of VBenx
Corporation; Karen W. Finnegan was joined by court order as a
plaintiff, in the right and for the benefit of VBenx
Corporation, and not individually.

[2] Peter Marcia, Walter Smith, and D. Michael Sherman.

that has depended largely on financing from its shareholders to stay afloat, some of which was in the form of promissory notes convertible to shares of VBenx stock. The plaintiffs appeal from a Superior Court judgment dismissing their claims for breach of fiduciary duty, unjust enrichment, and rescission, stemming from the defendants' conversion of their notes to VBenx stock, pursuant to which the defendants gained a majority interest in the company. Following a jury-waived trial, the judge upheld the validity of the loan transactions.

The issues on appeal involve Delaware law as it applies to the convertible notes, which were issued to VBenx shareholders without formal director approval and often without contemporaneous documentation, and the question whether the notes were void, or merely voidable and thus subject to ratification. The judge determined that the loan transactions were not void but were, at most, voidable, and that the VBenx board of directors had impliedly ratified the convertible nature of the loans. We affirm.

1. Background. We summarize the facts relevant to this appeal from the judge's very thorough October 18, 2012, "Findings of Fact, Rulings of Law and Order for Entry of Judgment." The plaintiffs, J. Brent Finnegan (Finnegan), Kenneth F. Phillips, and Karen W. Finnegan, seek to invalidate shares of VBenx stock issued to the defendants, principally

Walter Smith and Peter Marcia, who made convertible loans to VBenx and subsequently converted their notes to stock. Other defendants include Richard Baker, a VBenx director and chief financial officer, and D. Michael Sherman, a VBenx shareholder as of 2010.

All of the parties are shareholders in VBenx.[3] VBenx was formed by Finnegan, Phillips, Salvatore Percia, Baker, and Marcia in 2004, with its headquarters in Duluth, Georgia, and sales offices in Boston and Richmond, Virginia. VBenx provides employers with an Internet portal that communicates offerings of benefits and other products to employees. As of trial, the company had never made a profit, but survived on a series of loans from shareholders as well as a loan from Baytree National Bank & Trust (Baytree). Early on, the shareholder loans were rarely documented or accompanied by formal board action. Beginning in 2007, most of the shareholder loans were memorialized by promissory notes, though generally not contemporaneous with the loans, and sometimes issued long after and in various forms. On July 6, 2007, the board of directors voted to issue convertible promissory notes to Marcia and

---

[3] Karen Finnegan, the spouse of J. Brent Finnegan, belatedly claimed to own shares of VBenx stock, although her status as a shareholder did not appear in the trial record. She was joined as a plaintiff by order of the court on March 6, 2012, and enjoined from pursuing a similar action in the Delaware Court of Chancery.

Finnegan, "substantially on the terms of the promissory notes previously issued to Company founders and officers." Those previously issued notes did not provide for conversion of the loans to shares of VBenx stock, but some of the subsequent promissory notes, issued in 2007 and thereafter, did so, stating, in various language, that the principal and interest due on the note may, at the holder's option at any time, be converted into VBenx common stock.

Enter Smith, an attorney and former colleague of Marcia at an insurance brokerage firm, who became interested in investing in VBenx in late 2008. On February 26, 2009, Smith lent VBenx $100,000, and received a copy of a promissory note that outside counsel for VBenx, Philip Lotane, described as "a recent version of the promissory note that we've been using." The note provided for conversion to VBenx stock, at the holder's option, but did not specify the price per share.

On March 31, 2009, in lieu of the annual shareholders' meeting, Finnegan, Marcia, and Baker, as majority shareholders, elected themselves as directors by written consent, and subsequently amended the consent to include Smith as a director as well. By this time, Smith was doing legal work for VBenx. Phillips and Percia were not included as directors, and were

therefore eliminated.[4]  On April 22, 2009, Finnegan, Baker, Percia, Phillips, Marcia, Smith, and Mann participated in a shareholder meeting in which Finnegan reported that Baytree wanted its loans paid off, and that finding a new investor would likely require that the minority shareholders be bought out. All shareholders agreed that a term sheet stating a price of $0.1575 per share would be sent to Baker, Percia, and Phillips, as minority shareholders.  Finnegan approved of the written proposal and did not state any objection to the price.[5]  The minority shareholders, however, did not accept the offer.

On May 18, 2009, Finnegan, Marcia, and Baker met by telephone at a special meeting of the shareholders, and approved a $300,000 convertible note from Smith, on the same terms as the most recent notes taken from shareholders.  Smith sent a draft note to Baker for his $300,000 loan, which included the right to convert the loan to VBenx stock at $0.1575 a share.  On June 18, 2009, Smith requested authorization from Finnegan, Marcia, and Baker to amend the company's articles of incorporation to

---

[4] The judge's finding as to the composition of the board after March 31, 2009, is contested by Karen Finnegan.

[5] Indeed, Finnegan enthusiastically indorsed the price offered to the minority shareholders.  In response to an April 27, 2009, electronic mail message from Smith indicating that the price was "arguably above market, so a shareholder could not complain the price was too low," Finnegan responded, "Excellent strategy!"

increase the number of authorized shares from 10 million to 20 million, because "if everybody converted everything now, it looks like we could go a little over 10,000,000, which is our limit." Smith, Marcia, and Baker signaled their approval via electronic mail, and Finnegan provided written authorization. Smith then filed the amended certificate of incorporation with the Delaware Secretary of State on July 6, 2009.

Finnegan and Smith had a falling out in July, 2009, in part because Smith suggested that removing Finnegan's son from the company payroll might help alleviate the company's continuing financial problems. Finnegan began to hatch a plan with Phillips to eliminate Smith and Marcia from the company. Hearing word of the plan, Smith notified VBenx on July 22, 2009, that he intended to convert his $300,000 note to VBenx stock, along with a $32,000 note that he had purchased from Baker, and that Marcia intended to convert his notes, in the amount of $380,000, to stock as well. Finnegan realized that if both Smith and Marcia converted their notes at $0.1575 per share, they would gain control of the company, and he sought Mann's advice to prevent or delay the conversion. Nevertheless, on July 25, 2009, Smith and Marcia converted their notes to VBenx stock, at $0.1575 per share. At a board of directors meeting on July 27, 2009, Finnegan demanded documentation that he had approved Smith's conversion rights. The meeting devolved into

chaos and was adjourned. In January, 2010, Finnegan demanded that VBenx immediately repay all of his outstanding loans, in the total amount of $365,000, plus $67,274.14 in interest. At a special meeting of the directors held on January 14, 2010, Baker, Marcia, and Smith voted to accept a loan from Sherman, an outside investor, to pay off Finnegan's notes and to convert Sherman's loan to VBenx stock at $0.1575 per share. They also voted to remove Finnegan as an officer and director.

On September 4, 2009, Finnegan and Phillips filed this action, claiming breach of fiduciary duty and related claims in connection with Smith and Marcia's conversion of their loans to VBenx stock. The defendants filed several counterclaims, alleging misconduct in the plaintiffs' attempts to regain control of VBenx; the counterclaims were stayed until after the plaintiffs' claims were tried. The plaintiffs' claims were tried jury-waived over twenty-five days in April, May, and June, 2011. The judge found in favor of the defendants, and judgment under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), was entered on April 4, 2013.

2. <u>Rule 54(b)</u>. The judge allowed the defendants' motion for entry of separate and final judgment, finding that there was no just reason for delay, and noting that the litigation had proceeded in stages, was nearly four years old, and required prompt review. Though not challenged by the plaintiffs, we

questioned the basis for the rule 54(b) certification at oral argument and requested additional briefing on the issue.

Determination whether there exists a just reason for delay is within the sound discretion of the trial judge and will be reversed only for an abuse of that discretion. Long v. Wickett, 50 Mass. App. Ct. 380, 386 (2000). The judge gave as his first reason that the litigation had proceeded in stages, and the docket reflects that on December 31, 2010, discovery on the defendants' counterclaims was stayed until after the scheduled trial of the plaintiffs' claims. "To satisfy the requirements of Rule 54(b) . . . the claim [finally] adjudicated must be a 'claim for relief' separable from and independent of the remaining claims in the case." Id. at 391, quoting from Brunswick Corp. v. Sheridan, 582 F.2d 175, 182 (2d Cir. 1978). According to the defendants, the claims and counterclaims are distinct: the plaintiffs' claims, involving the right to convert loans to shares, relate, with one exception, to events that occurred before August, 2009, while the defendants' counterclaims, involving the plaintiffs' allegedly bad faith attempts to regain control of the company, relate predominantly to events that have occurred since August, 2009. This does not appear to be a case where "the facts underlying the adjudicated portion of the case are largely the same as or substantially overlap those forming the basis for the unadjudicated issues."

Long v. Wickett, supra at 392.  Moreover, the parties report

that the counterclaims will not be pursued if the judgment is

reversed on appeal.  Compare id. at 399 n.15 (remaining claims

would proceed regardless of outcome of appeal).

The judge additionally relied on the fact the case had been

underway for four years when judgment under rule 54(b) entered,

and the defendants indicate in their supplemental filing that

uncertainty as to control is harming the company.  According to

the judge, the parties themselves are largely to blame for this

protracted litigation.[6]  Nevertheless, the record supports the

judge's reasoning, in that the company and its employees would

benefit from prompt review.  See, e.g., Navitag Technologies,

Inc. v. Silva, 738 F. Supp. 2d 207, 211 (D. Mass. 2010).

Our review of the record confirms that adequate

justification existed for the order, and that it was not an

abuse of discretion.  Nevertheless, we think it worth

reiterating that trial judges should provide a sufficient

statement of the reasons for certification.  See, e.g., J.B.L.

Constr. Co. v. Lincoln Homes Corp., 9 Mass. App. Ct. 250, 253

(1980); Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103, 104-105 n.2

---

[6] As the judge described in his findings, "What should, or at least could have been a fairly straight-forward civil action has devolved, due largely to the personalities and deep pockets of the parties and the zealousness of their counsel, into an all-out war of attrition, retribution, name-calling, and over-the-top, scorched-earth litigation."

(1997); Long v. Wickett, 50 Mass. App. Ct. at 403 (findings lacked the requisite balancing of competing purposes underlying the rule or an evaluation of the relationship between the claims dismissed and those left pending).  "It is essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law."  Long v. Wickett, supra at 402, quoting from Protective Committee v. Anderson, 390 U.S. 414, 434 (1968).  Ever mindful of our long-standing and fundamental policy "against premature and piecemeal appeals," Long v. Wickett, supra at 388, trial judges are urged to provide the more thorough analysis outlined in Long v. Wickett, supra at 395-403, consistent with what should be "the restrictive and infrequent use of rule 54(b)."  Id. at 389.

3.  Void versus voidable acts.  The judge first tackled the issue whether the absence of corporate formalities in connection with the board's approval of convertible loans to VBenx shareholders meant the transactions were void, or merely voidable, under Delaware law.  "[T]he essential distinction between voidable and void acts is that the former are those which may be found to have been performed in the interest of the corporation but beyond the authority of management, as

distinguished from acts which are ultra vires, fraudulent or gifts or waste of corporate assets."  Klaassen v. Allegro Dev. Corp., 106 A.3d 1035, 1046 (Del. 2014), quoting from Michelson v. Duncan, 407 A.2d 211, 218-219 (Del. 1979).  At the time of trial, the distinction was critical to the plaintiffs' case, as "voidable acts are susceptible to cure by shareholder approval while void acts are not."  Michelson v. Duncan, supra at 219.

The defendants maintain that the plaintiffs ratified the convertible loans and other corporate acts now complained of, an argument that would not assist the defense if the transactions were void.  See, e.g., STAAR Surgical Co. v. Waggoner, 588 A.2d 1130, 1134 (Del. 1991).  The trial judge determined that the lack of compliance with corporate formalities in the directors' approval of the convertible loans did not require that they be held void, given the informal manner in which the VBenx board had handled its corporate affairs from the company's inception.

Since trial, the necessity of distinguishing between void and voidable corporate acts has been largely eliminated by enactment of two amendments to the Delaware General Corporation Law, Del. Code Ann. tit. 8, §§ 204 and 205 (2014).[7]  The

---

[7] For our purposes, the amendments may be summarized as follows:  "Sections 204 and 205, effective April 1, 2014, provide that 'no defective corporate act or putative stock shall be void or voidable solely as a result of a failure of authorization if ratified . . . or validated[, Del. Code Ann. tit. 8, § 204(a),]' pursuant to the sections and that the Court

amendments, which became effective on April 1, 2014, were recently applied retroactively, to corporate acts that occurred prior to the amendment of the statute, by the Delaware Court of Chancery in In re Numoda Corp. Shareholders Litigation, C.A. No. 9163-VNC (Del. Ch. Jan. 30, 2015), issued after oral argument in this case.  The amendments essentially abolished the distinction between void and voidable transactions and overturned the case law on which the plaintiffs here rely.[8]  "Part of this effort was to eliminate hyper-technical distinctions and the uncertain divide between void and voidable acts."  Id.  As the court

---

may '[d]etermine the validity of any corporate act or transaction and any stock, rights or options to acquire stock[, Del. Code Ann. tit. 8, § 205(a)(4)].'  Section 204 provides a roadmap for a board to remedy what would otherwise be void or voidable corporate acts and stock.  The legislation facilitates self-help, but it also provides Section 205 for situations where judicial intervention is preferable or necessary -- such as when the sitting board has questionable status."  In re Numoda Corp. Shareholders Litigation, C.A. No. 9163-VCN (Del. Ch. Jan. 30, 2015).

[8] The legislative synopsis for § 204 provides that the section "is intended to overturn the holdings in case law, such as STAAR Surgical Co. v. Waggoner, 588 A.2d 1130 (Del. 1991) and [Blades vs. Wisehart, C.A. No. 5317-VCS (Del. Ch. Nov. 17, 2010)], that corporate acts or transactions and stocks found to be 'void' due to failure to comply with applicable provisions of the General Corporation Law or the corporation's organizational documents may not be ratified or otherwise validated on equitable grounds."  In re Numoda Corp. Shareholders Litigation, supra, quoting from H.R. 127, 147th General Assembly, Reg. Sess. (Del. 2013).  A related case relied upon by the plaintiffs, Boris vs. Schaheen, C.A. No. 8160-VCN (Del. Ch. Dec. 2, 2013), is now moot under In re Numoda Corp. Shareholders Litigation, supra.

explained, pursuant to § 205, "[t]he legislation thus empowers the Court to grant an equitable remedy for corporate acts that once would have been void at law and unreachable by equity." Id. As such, the defective corporate acts at issue in this case, whether void or voidable, would be subject to ratification under the amendments.

The plaintiffs point out that the defendants did not comply with the procedures set out in § 204, allowing for ratification of a void corporate act through the board's adoption of the appropriate resolution, or plead § 205 and seek a declaration from the trial court in accordance with the factors suggested for consideration in that section. Of course, the amendments became effective one and one-half years after the judge had issued his findings in this case and the defendants had prevailed. We note that the judge's comprehensive findings in this case are consistent with those factors to be considered under § 205, and we think the defendants would be entitled under § 205 to a declaration to that effect.[9] See, e.g., In re Numoda

---

[9] Among the § 205 factors the court may consider are "(1) [w]hether the defective corporate act was originally approved or effectuated with the belief that the approval or effectuation was in compliance with the provisions of this title, the certificate of incorporation or bylaws of the corporation; (2) [w]hether the corporation and board of directors has treated the defective corporate act as a valid act or transaction and whether any person has acted in reliance on the public record that such defective corporate act was valid; (3) [w]hether any person will be or was harmed by the ratification or validation

Corp. Shareholders Litigation, supra ("The legislation thus empowers the Court to grant an equitable remedy for corporate acts that once would have been void at law and unreachable by equity").

Even apart from the recent amendments, however, the judge's ruling that the convertible loan transactions were not void for lack of corporate formalities was fully consistent with Delaware case law. Because the VBenx board of directors was authorized to issue stock, their failure to follow corporate formalities in so doing would render the shares voidable, rather than void. See Carramerica Realty Corp. v. Kaidanow, 321 F.3d 165, 170-171 (D.C. Cir. 2003) (corporation did not lack the power to issue the shares, but its method for issuing shares violated Delaware statutory requirements, rendering them merely voidable); Kalageorgi v. Victor Kamkin, Inc., 750 A.2d 531, 538-539 (Del. Ch. 1999) (despite the absence of a formal board meeting or written consent, the evidence supported only one inference, that

---

of the defective corporate act, excluding any harm that would have resulted if the defective corporate act had been valid when approved or effectuated; (4) [w]hether any person will be harmed by the failure to ratify or validate the defective corporate act; and (5) [a]ny other factors or considerations the Court deems just and equitable." Del. Code Ann. tit. 8, § 205(d) (2014).

the directors intended to authorize the issuance of shares to the defendants).[10]

The plaintiffs, citing In re Numoda Corp. Shareholders Litigation, supra, regarding the necessity for a distinction between corporate acts and mere informal intentions or discussions, posit that informal discussions or casual agreements among two or three directors should not be recognized as board approval, even in a company where the directors' actions are typically informal.[11] The court in In re Numoda Corp. Shareholders Litigation found that in the context of a corporation that did not hold formal board meetings, take minutes, or issue stock certificates, corporate action was established when the directors "met with an intent to discuss board business," as distinguished from "a passing conversation at the water cooler." Id. In the present case, the evidence was overwhelming that the VBenx board members intended to take

---

[10] Even were we to consider STAAR Surgical Co. v. Waggoner, 588 A.2d 1130 (Del. 1991), the holding is not applicable to these facts, as that case involved the issuance of preferred shares, which were not authorized by the certificate of incorporation and were, accordingly, held void as beyond the board's authority. Id. at 1137.

[11] While the evidence indicates that all the directors were present and voted to authorize Smith's note at the May 18, 2009, meeting, the plaintiffs claim that the meeting was specifically called as a shareholder meeting, and not a board of directors meeting, and that the vote, therefore, did not comply with the corporate formalities necessary to constitute a board vote.

official action on the convertible loans, consistent with the manner in which the company had operated for years.  See, e.g., In re Numoda Corp. Shareholder Litigation, supra (court "looks for evidence of a bona fide effort bearing resemblance to a corporate act but for some defect that made it void or voidable").

4.  Ratification.  Under Delaware law, voidable corporate acts are subject to equitable defenses, including ratification. Carramerica Realty Corp. v. Kaidanow, 321 F.3d at 171, 173.  See Michelson v. Duncan, 407 A.2d at 219-220.  The plaintiffs again point to the lack of formal board action or shareholder vote to argue against ratification, but the judge properly relied on cases holding that implied ratification may be gleaned from conduct or acquiescence indicating acceptance.  See, e.g., Frank v. Wilson & Co., 32 A.2d 277, 283 (Del. 1943).  Ratification may be implied if the board, with knowledge of the facts, retains the benefits of the act, treats it as binding, or acquiesces in it.  Carramerica Realty Corp. v. Kaidanow, 321 F.3d at 173.

The judge found that the VBenx directors ratified the ongoing practice of funding VBenx through shareholder loans that were convertible to stock and, in particular, that the directors ratified Smith's $300,000 convertible loan at a price of $0.1575 per share at the May 18, 2009, meeting.  The judge found that all of the VBenx convertible loans were authorized by the

directors and were ratified by their acceptance of the loan proceeds with full knowledge of the nature of the transactions. See, e.g., Kalageorgi v. Victor Kamkin, Inc., 750 A.2d at 538-539 (board's pattern of conduct after issuing the contested stock without formal approval at a board meeting showed clear proof of its intention to authorize the issuance).

The evidence supported the judge's finding of ratification. Aside from the general practice of issuing convertible promissory notes to receive funds from shareholders in order to keep the company going, there was evidence that the plaintiffs knew and approved of Smith's initial loan to VBenx of $100,000, which was convertible to shares at any time after April 15, 2009, in accordance with the terms of a promissory note dated April 15, 2009. Subsequently, at the April 22, 2009, shareholders' meeting, Finnegan informed the others that Baytree would like to be repaid and that VBenx needed to raise capital from a new investor, likely requiring that the minority shareholders be bought out. All the shareholders agreed that a term sheet stating the price of $0.1575 per share would be sent to Baker, Percia, and Phillips, as the minority shareholders. The judge found that Finnegan "liked the proposal and stated no

objection to the price per share," and, in the judge's view, the price "was reasonable if not exceedingly generous."[12]

The evidence further supported the judge's finding that when the three minority shareholders did not accept VBenx's offer, the directors, including Finnegan, Marcia, Baker, and Smith, held a special meeting on May 18, 2009, when all agreed that Smith would provide a loan of $300,000, on the same terms as the most recent notes to the shareholders, which the judge found to be convertible at a price of $0.1575 per share. Further, in June, 2009, the board approved and authorized amendment of the certificate of incorporation to permit the issuance of additional shares, specifically so that there would be enough shares available in case all the shareholders chose to convert their loans. Their approval of the amendment at that time would be nonsensical if, as the plaintiffs insist, they thought Smith lent the money without conversion rights. Whatever may have been Finnegan's subjective intent, his conduct, along with that of the rest of the board, established that all were fully informed of the convertible nature of the loans, benefited from the receipt of the funds to VBenx, and accepted that the loans could be converted to shares if the

---

[12] The plaintiffs acknowledged at oral argument that there was evidence to support the judge's finding that the price of $0.1575 per share was fair as of July 25, 2009, and that the finding was not clearly erroneous.

shareholders so elected.  See, e.g., Carramerica Realty Corp. v. Kaidanow, 321 F.3d at 173 (board resolution authorizing additional shares was only logical if the board was aware of and had previously approved the conversion rights); Klaassen v. Allegro Dev. Corp., 106 A.3d 1035, 1048 (Del. 2014).  Grimes v. Alteon, Inc., 804 A.2d 256 (Del. 2002), on which the plaintiffs rely, and which ruled unenforceable an oral promise by a corporate officer to sell a shareholder private stock in the future, has no bearing on the facts here.

5.  Remaining matters.  The plaintiffs claim that the amendment to the certificate of incorporation to authorize an increase in shares lacked director approval, and that the shares issued to Sherman exceeded the limit authorized by the certificate and were therefore void.  The evidence is to the contrary.  On June 18, 2009, Smith notified Finnegan, Marcia, and Baker that the company's articles of incorporation should be amended to increase the number of authorized shares from 10 million to 20 million.  He specifically gave as a reason that "[i]f everybody converted everything now, it looks like we could go a little over 10,000,000, which is our limit."  Finnegan, Marcia, and Baker signaled their approval via electronic mail, and on June 30, 2009, Finnegan signed an "Action in Writing of Shareholders of VBenx Corporation" authorizing the increase.  On

July 6, 2009, Smith filed a certificate of amendment with the Division of Corporations of the Secretary of State of Delaware.

We reject the plaintiffs' challenge to the validity of the amendment based on their contention that the board did not adopt a resolution declaring the amendment advisable and that the shareholders did not meet to approve the amendment.  For the same reason that the judge upheld the other board actions as valid despite the lack of corporate formalities, the judge ruled that the increase was approved by all members of the board, who were also the owners of the majority of the common stock.  The judge ruled that the filing satisfied the requirements of Del. Code Ann. tit. 8, § 242(b)(1), and the plaintiffs have not persuaded us otherwise.

As a final matter, Karen Finnegan appeals from the judge's ruling regarding the composition of the board of directors as a result of the March 31, 2009, written consent selecting Marcia, Baker, Finnegan, and Smith as directors.  We agree with the judge that, according to the evidence, the subsequent conduct of all parties supported the conclusion that Phillips and Percia were no longer directors after the annual shareholders meeting.

<u>Judgment affirmed</u>.