FLEMMING vs. GREYSTAR MANAGEMENT SERVICES, L.P., 100 Mass. App. Ct. 469

 
 PHOEBE FLEMMING vs. GREYSTAR MANAGEMENT SERVICES, L.P.

100 Mass. App. Ct. 469
 September 7, 2021 - October 28, 2021

Court Below: Housing Court, Eastern Division
Present: Meade, Shin, & Walsh, JJ.

 

Landlord and Tenant, Lease as contract, Rent, Security deposit, Termination of lease, Attorney's fees. Contract, Lease of real estate. Animal. Dog. Practice, Civil, Class action.

In a civil action brought by a tenant against a landlord, claiming a violation of the security deposit statute, G. L. c. 186, § 15B, by requiring her to pay "animal rent" for the right to keep dogs in her apartment, a Housing Court judge erred in granting partial summary judgment in favor of the tenant, where the plain language of the statute did not support the tenants argument that the animal rent constituted an illegal security deposit charged after the commencement of the tenancy and "paid over time." [472-473]

In a civil action brought by a tenant against a landlord, claiming a violation of the security deposit statute, G. L. c. 186, § 15B, the tenant lacked standing to challenge the provisions governing reletting and buyout fees as well as the provision authorizing attorney's fees in the event of default, where she did not show that she suffered a distinct injury or harm as a result of the landlord's actions; moreover, even if the tenant could establish injury, her claim would fail because the statute did not prohibit a landlord from charging reletting or buyout fees or attorney's fees. [473-475] 

In the circumstances of a civil action, this court did not address a claim regarding an alleged violation of G. L. c. 93A, and expressed no opinion on whether class certification was appropriate. [475]

CIVIL ACTION commenced in the Eastern Division of the Housing Court Department on December 16, 2016.

 The case was heard by Maria Theophilis, J., on a motion for summary judgment, and entry of separate and final judgment was ordered by Michael Malamut, J.

 Marissa I. Delinks for the defendant.

 Kevin R. Heffernan for the plaintiff.

 SHIN, J. Phoebe Flemming brought this putative class action against her former landlord, Greystar Management Services, L.P. (Greystar), claiming principally that Greystar violated the security

 Page 470 

 deposit statute, G. L. c. 186, § 15B, and G. L. c. 93A by requiring her to pay "animal rent" for the right to keep dogs in her apartment. Concluding that the animal rent (and various other fees provided for by the lease contracts) were unlawful under G. L. c. 186, § 15B, a Housing Court judge (motion judge) granted partial summary judgment in Flemming's favor. Greystar appeals. We conclude that the plain language of G. L. c. 186, § 15B, does not support Flemming's claims and therefore vacate and remand for further proceedings. [Note 1]

 Background. The facts are undisputed. Flemming rented an apartment managed by Greystar from June 5, 2013, to January 31, 2016, pursuant to three one-year lease contracts. Attached to each of the lease contracts was an "Animal Addendum," which authorized Flemming to keep dogs in the apartment. In exchange, Flemming agreed that her "total monthly rent . . . will be increased" by an "additional animal rent." The animal rent was $125 monthly from 2013 to 2014 (added to $1,024 in base rent) and $150 monthly from 2014 to 2016 (added to $1,170 in base rent). Flemming paid a security deposit of $900.

 In December 2015 Greystar served Flemming two notices to

 Page 471 

 quit, alleging chronic late payments and other violations of the lease contracts, including that she had "permitted [her] animal/dog to bark and generally disrupt other residents' rights to quiet enjoyment of their apartments and related facilities." Flemming vacated the apartment in January 2016, approximately four months before the lease term was set to expire. Soon thereafter, Greystar sent Flemming a final account statement reflecting that she owed a balance of $2,128.75: $481.25 in legal fees, $2,040 in past due base rent, $200 in late charges, and $307.50 in past due animal rent, minus Flemming's $900 security deposit. Flemming did not pay any portion of this balance.

 After serving Greystar a demand letter under G. L. c. 93A, Flemming brought this action. In counts I and V of the complaint, Flemming claimed that the Animal Addendum and several other provisions of the lease contracts -- authorizing Greystar to charge late fees, reletting and buyout fees, [Note 2] and attorney's fees in the event of default under the lease contracts -- were unlawful under G. L. c. 186, § 15B, and, as a consequence, G. L. c. 93A. Judgment entered for Flemming on counts I and V, awarding her actual and nominal damages for the animal rent and late fees, [Note 3] nominal damages for the other categories of fees, and attorney's fees and costs.

 Discussion. The Legislature enacted G. L. c. 186, § 15B, in response to the "well known" problems associated with security deposits. Hampshire Village Assocs. v. District Court of Hampshire, 381 Mass. 148, 151-152, cert. denied, 449 U.S. 1062 (1980). Section 15B protects the rights of tenants by, among other things, imposing strict requirements governing the handling of security deposits and restricting the amount of upfront charges that a landlord may collect from a tenant or prospective tenant. Specifically, "[a]t or prior to the commencement of any tenancy," a 

 Page 472 

landlord may not charge in excess of the following:

"(i) rent for the first full month of occupancy; and,

"(ii) rent for the last full month of occupancy calculated at the same rate as the first month; and,

"(iii) a security deposit equal to the first month's rent provided that such security deposit is deposited as required by subsection (3) and that the tenant is given the statement of condition as required by subsection (2); and,

"(iv) the purchase and installation cost for a key and lock."

G. L. c. 186, § 15B (1) (b). See Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 616 (2019).

 There is no contention here that Greystar imposed any upfront charges that were in violation of § 15B (1) (b). Instead, Flemming's claims arise out of § 15B (1) (d), which states as follows:

"No lessor or successor in interest shall at any time subsequent to the commencement of a tenancy demand rent in advance in excess of the current month's rent or a security deposit in excess of the amount allowed by this section."

G. L. c. 186, § 15B (1) (d). The motion judge, citing Broad St. Assocs. vs. Levine, Northeast Housing Court, No. 12SP2041 (July 30, 2012), construed this provision to incorporate the restrictions of § 15B (1) (b). That is, the motion judge concluded that, after a tenancy has commenced, the landlord is prohibited under § 15B (1) (d) from charging fees in excess of the four categories listed in § 15B (1) (b). The motion judge deemed the animal rent to be unlawful on this basis.

 Our review is de novo. See Chambers v. RDI Logistics, Inc., 476 Mass. 95, 99 (2016).

 1. Animal rent. Seizing on the words "at any time subsequent to the commencement of a tenancy" in § 15B (1) (d), Flemming contends that Greystar could not collect animal rent during the period of her tenancy because it is not one of the charges authorized by § 15B (1) (b). In support of this interpretation, Flemming relies on the reasoning in Broad St. Assocs. that the security deposit statute "makes no distinction between up-front deposits and recurring fees, and the law plainly prohibits requiring a tenant to pay 'any amount' in excess of (i) first month's rent, (ii) last month's rent, (iii) security deposit, and (iv) cost for key and lock."

 Page 473 

 This is not what the statute says, however. While § 15B (1) (b) strictly regulates what a landlord may charge a tenant "[a]t or prior to the commencement of any tenancy," once the tenancy has commenced, § 15B (1) (d) prohibits two things: the demanding of (1) "rent in advance in excess of the current month's rent" and (2) "a security deposit in excess of the amount allowed by this section," i.e., the amount of the first month's rent. Flemming does not claim that Greystar ever sought to collect either rent in advance of the current month's rent or an additional security deposit. Nor was the animal rent charged by Greystar equivalent to a security deposit "paid over time," as Flemming argues. The animal rent was not a deposit intended to secure performance to keep the apartment free from damage. Rather, it was additional rent, which Flemming agreed to pay, in exchange for the right to keep dogs in the apartment.

 Flemming provides a litany of reasons why it should be illegal for landlords to charge extra rent for pets, but, whatever merit there is to those arguments, they are properly directed to the Legislature. Our role is to interpret statutes as written, see Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 539 (1996), cert. denied, 520 U.S. 1131 (1997), and, here, the plain language of § 15B (1) (d) does not support Flemming's claim of a statutory violation.

 2. Reletting and buyout fees. We agree with Greystar that Flemming lacks standing to challenge the lease provisions governing reletting and buyout fees. It is undisputed that Greystar did not charge Flemming either fee when she vacated the apartment. Nonetheless, Flemming contends that she was injured because the risk of incurring the fees might affect a tenant's "life decisions," such as whether "to move for a new employment opportunity." But Flemming did not raise this argument to the motion judge and offered no evidence that any such risk in fact influenced her decision-making. See Cesso v. Todd, 92 Mass. App. Ct. 131, 139 (2017) (speculation insufficient to defeat summary judgment). Moreover, that G. L. c. 93A, § 9 (3), authorizes nominal damages did not relieve Flemming of the obligation to prove injury. "[A] plaintiff bringing an action for damages under c. 93A, § 9, must allege and ultimately prove that she has . . . suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself." Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013). Commonwealth v. Chatham Dev. Co., 49 Mass. App. Ct. 525 (2000), relied on by Flemming, is not to the contrary. That was a 

 Page 474 

case brought by the Attorney General and involved the different question whether a landlord may be assessed civil penalties absent a showing of actual harm to any tenant. See id. at 528-529.

 In any event, for the reasons already discussed with respect to animal rent, G. L. c. 186, § 15B (1) (d), did not prohibit Greystar from charging reletting or buyout fees. Those fees do not constitute rent demanded in advance or an additional security deposit. Flemming's contention that the lease provisions violated the common law -- because it is for a court to determine whether a landlord has accepted a tenant's surrender of the premises and has mitigated damages -- is not germane to Greystar's liability under the security deposit statute. [Note 4]

 3. Attorney's fees. We likewise conclude that Flemming lacks standing to challenge the lease provision authorizing attorney's fees in the event of default under the lease contracts. Although Greystar included legal fees in the final account statement, it is undisputed that Flemming did not pay them, [Note 5] and Flemming's other asserted sources of injury lack an evidentiary basis. See Tyler, 464 Mass. at 503. In particular, there is no evidence in the summary judgment record supporting Flemming's assertions that the charge for legal fees influenced her decision to vacate the apartment or that it damaged her credit score. [Note 6]

 Furthermore, even if Flemming could establish injury, her claim fails again on the merits because the charge for legal fees was not a demand for rent in advance or for an additional security deposit. See G. L. c. 186, § 15B (1) (d). In fact, the motion judge concluded that the attorney's fees provision was not itself unlawful, presumably because G. L. c. 186, § 20, contemplates that a lease of residential property may "provide that in any action or summary proceeding the landlord may recover attorneys' fees and expenses incurred as the result of the failure of the tenant to

 Page 475 

 perform any covenant or agreement contained in such lease." And although the motion judge deemed the manner in which Greystar sought the fees -- i.e., prior to any court judgment -- unlawful under § 15B (1) (d), the statutory language does not support that conclusion. Flemming's argument to the contrary is based once more on her misimpression that § 15B (1) (d) prohibits "additional fees besides the four permitted ones cited in [§ 15B (1) (b)], imposed after the commencement of the tenancy." As discussed above, her reading cannot be squared with the plain words of the statute.

 4. General Laws c. 93A and class certification. Because Flemming's c. 93A claim was derivative of her claim under the security deposit statute, she cannot establish a c. 93A violation pertaining to the animal rent, reletting and buyout fees, and attorney's fees. See, e.g., Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 85-86 (2004); Macoviak v. Chase Home Mtge. Corp., 40 Mass. App. Ct. 755, 760 (1996). Her suggestion at oral argument that Greystar violated c. 93A independent of any violation of the security deposit statute was not fairly raised in the complaint or summary judgment papers, and so we need not address it. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006). [Note 7]

 Similarly, class certification was premised on the motion judge's erroneous determination that all of the challenged lease provisions were unlawful under the security deposit statute and that Flemming was entitled to nominal damages without having to show actual injury. We express no opinion on whether class certification is still appropriate based on those portions of the claims relating to the late fees.

 Conclusion. The August 21, 2020, judgment is vacated, and the case is remanded for entry of judgment for Greystar on those portions of counts I and V relating to the animal rent, reletting and buyout fees, and attorney's fees, and for redetermination of damages and attorney's fees and costs, adjusted to reflect that Flemming prevailed only on those portions of counts I and V relating to the late fees. [Note 8]

So ordered.

FOOTNOTES
[Note 1] Although neither party has raised the issue, we must determine whether we have jurisdiction over the appeal. See, e.g., Maxwell v. AIG Dom. Claims, Inc., 460 Mass. 91, 99-100 (2011). The motion judge allowed Flemming's motion for partial summary judgment in part and denied Greystar's cross motion for summary judgment, and a judgment awarding Flemming damages, attorney's fees, and costs entered on April 26, 2019. Both parties filed notices of appeal from the April 26, 2019, judgment; that judgment was not appealable, however, because it was not designated as separate and final under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). Subsequently, the parties filed a stipulation dismissing Flemming's remaining individual claims with prejudice and an "assented-to order for separate and final judgment as to [Flemming's] individual claims." A second judge endorsed the assented-to order, and on August 21, 2020, a rule 54 (b) judgment entered "dismissing [Flemming's] individual claims with prejudice pursuant to" the assented-to order. Greystar filed a second notice of appeal on September 21, 2020. We conclude that this second notice of appeal brings the merits properly before us. While the rule 54 (b) judgment refers only to the claims dismissed by stipulation, it is clear from the assented-to order that the parties' intent was for separate and final judgment to enter on all the individual claims, including those resolved on summary judgment, while the class claims were stayed pending resolution of this appeal. In addition, the second judge was within his discretion in finding no just reason for delay. See Finnegan v. Baker, 88 Mass. App. Ct. 35, 39 (2015). In light of the procedural history, and that the parties have fully briefed the merits, the interests of judicial economy would not be served by remanding for entry of a new rule 54 (b) judgment. See, e.g., Maxwell, supra. 

[Note 2] In brief, the reletting provision allowed Greystar to charge a fee not to exceed the monthly rent if Flemming moved out early and certain other conditions were met. Similarly, a supplement to the 2015 lease contract, entitled "Lease Contract/Buy-Out Agreement," allowed Flemming to move out early if she met certain conditions, including payment of a $1,024 fee. 

[Note 3] While acknowledging that G. L. c. 186, § 15B (1) (c), authorizes a landlord to charge late fees if the tenant is thirty days overdue on rent, the motion judge determined that Greystar illegally charged Flemming on the twenty-ninth day. Greystar does not challenge this ruling on appeal. Although Greystar does argue that the motion judge erred by awarding nominal damages for the late fees violation, in addition to actual damages, Greystar has not adequately developed this argument and has not demonstrated an entitlement to relief on this basis. 

[Note 4] The complaint, fairly read, does not raise a claim under the common law, and we express no opinion on that issue. We note in passing that the lease contracts contained a mitigation of damages provision, which required Greystar to "exercise customary diligence to relet and minimize damages" and to "credit all subsequent rent that [it] actually receive[d] from subsequent residents against [Flemming's] liability for any sums due including all reletting costs." 

[Note 5] Greystar also filed no counterclaims in this action and, at the summary judgment hearing, disavowed any intent to collect the attorney's fees. 

[Note 6] The record contains a letter sent by National Credit Systems, Inc., to Flemming in April 2016, stating that Flemming had thirty days to "dispute the validity of [the] debt or any portion thereof." The record does not reflect what action Flemming took in response to this letter. 

[Note 7] The judgment on that portion of the c. 93A claim relating to the late fees still stands, however, see note 3, supra. 

[Note 8] Flemming's motion for appellate attorney's fees is denied. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.